KOONCE v. BOARD OF SUP'RS OF GRENADA COUNTY.

(Division A. Oct. 20, 1947. Suggestion of Error Overruled Nov. 10,
1947.)

[32 So. (2d) 264. No. 36501.]

ON SUGGESTION OF ERROR.

(Division A. Nov. 10, 1947.)

[32 So. (2d) 456. No. 36501.]

Stone & Stone, of Coffeeville, for appellant.

Cowles Horton, of Grenada, for appellee.

Argued orally by **W. I. Stone**, for appellant, and by **Cowles Horton**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This suit was brought by the appellant J. L. Koonce to reform a deed which he had obtained from the appellee Board of Supervisors for the timber on a sixteenth section of land, commonly known as "school land." The deed purports to convey all of the timber on Section 16,

Township 23, Range 7 East, in Grenada County, less that on the SW¼ thereof. It is conceded that it was the mutual intention of both the grantor and the grantee that the land should have been described as being in Range 6 East instead of Range 7 East.

After cutting and removing considerable timber from the land in Range 6 East, the appellant discovered the mistake in his deed and sought to obtain a corrected one, but which correction was refused by the appellee because the Members of the Board of Supervisors had in the meantime learned that they had sold the timber for a grossly inadequate price, due to their failure to exercise the proper care in previously ascertaining its value. Then, too, it was their contention that only the merchantable pine timber was to be conveyed, whereas the grantee was claiming the right to cut both the hardwood and pine trees.

The trial court declined to reform the deed, dismissed the bill of complaint and adjudged that the county under its cross bill was entitled to recover the sum of $900 and costs against the complainant, representing the difference between the $300 purchase price paid for the timber and the fair value of that already cut and removed from the land, and the court enjoined the further cutting and removal of any more timber of any kind therefrom.

The proof discloses that the appellant, who was experienced in the purchase and sale of timber as a sawmill man, and living a few miles from the land in question, made application to the Board of Supervisors to purchase this timber for $250, stating to the member of the board from the district in which the same was situated that there "wasn't much timber there and he would give $250" for it. Thereupon, a committee of two members of the board was appointed to make an investigation as to the value of the timber and report the finding. One of them testified that "we did not go in the timber, we just rode along the road and looked at it from the road." Upon cross examination, he testified that "We got out of

the car and walked out there a little piece, I didn't know where to go or nothing about it.'' The testimony of the other member does not disclose a more through investigation. At any rate, the applicant thereafter raised his bid to $300 and the same was accepted.

One timber expert, the proof as to whose qualification as such was waived by the appellant, testified that there had been from $1,200 to $1,500 worth of timber cut from the land, and that there was $3,500 to $5,000 more still standing thereon at the time the injunction was issued. Another such witness made a similar estimate, although the manner at which he arrived at the value of the timber cut is not very satisfactory. But, the grantee in the deed declined to express any opinion as to its value. At any rate, the trial court was warranted in finding either from the undisputed testimony of the first expert witness or that of these two witnesses as a whole that the timber which the grantee claimed the right to cut was worth $5,000 or $6,000, and that the amount thereof already cut was worth between $1,200 and $1,500. The chancellor found as a fact that the total worth of the timber was $5,000, and that the value of that already cut was at least $1,200.

We are therefore of the opinion that whether the Board of Supervisors merely meant to sell the merchantable pine timber, which alone was worth $4,000 or $5,000, or both the hardwood and pine timber, worth from $5,000 to $6,000, a court of equity would not have been warranted in granting the complainant a reformation of the deed, notwithstanding that a mutual mistake was admittedly made as to the range number, for the reason that the Board of Supervisors had no right to sell this trust property, which it was administering as an agency of the State on behalf of the educable school children of the township in the capacity of a trustee, at such a grossly inadequate price in violation of Section 95 of the State Constitution, which prevents ''lands belonging to, or under the control of the state [from being] donated

directly or indirectly, to private corporations or individuals,'' etc. This is even true where such lands belong to the State in fee simple, and here the property in question was being held by the State as trustee, and was being controlled through the Board of Supervisors as a trust estate. This rule was applied as to lands patented by the State in the case of State ex rel. McCullen v. Tate, 188 Miss. 865, 196 So. 755, and other cases.

It is true, as heretofore stated, that the members of the Board of Supervisors admitted that they intended to sell to the appellant at least the merchantable pine timber for $300 on said land in Range 6, where he had been cutting such timber, but the point is that when the suit was filed for reformation of the deed, he held no conveyance for any timber at all in Range 6, and was seeking in a court of equity to enforce a sale that the Board had no right to make except at a fair price.

As stated by the chancellor in his finding of fact, the members of the Board of Supervisors realized their own mistake, and ''they come confessing their mistake.'' It was their duty to contest the reformation suit upon being fully advised as to the gross inadequacy of the agreed sale price and the true value of the timber; to file a cross bill to recover the difference in the price paid and the value of the timber cut; and to enjoin the further cutting of the remaining timber. If they had not done so, it would have become the duty of the State, through its proper official, to file an original suit for that purpose. Private individuals who negligently fail to ascertain the value of their own property may, in the absence of fraud, bind themselves by conveyances thereof for a grossly inadequate price, but this is not true of public officials dealing with property held by the State, either in fee simple or as trustee, and especially as trustee, where the price is so grossly inadequate as to virtually amount to a donation, in violation of our State Constitution.

From the foregoing views it follows that the decree of the trial court in denying affirmative relief to the ap-

pellant in a court of equity, and in granting the relief hereinbefore mentioned in favor of the appellee, was highly proper, and based upon sufficient pleadings and proof, and should be affirmed.

Affirmed.

## ON SUGGESTION OF ERROR.

**Roberds, J.,** delivered the opinion of the court on suggestion of error.

The decree of the lower court, affirmed by us, charged appellant with the sum of $1,200 as the stumpage value of the cut timber. Appellant suggests that this was error. He says nothing was allowed for the cost of removing and manufacturing the timber into lumber, and that this cost should have been deducted from the $1,200.

A fair interpretation of the evidence, we think, proves that the stumpage price of the cut timber was at least $1,200. Certainly, the chancellor was justified in so construing it. E. R. Green, an expert timber man, testified as to the value of the timber yet standing and also the value of that which had been removed. He was asked his estimate of the value of the cut timber. He replied: "Twelve to $1,500." He was then asked the value of that yet standing. He estimated that at $4,500 "stumpage value." Then, he was asked: "And this other do you figure what was taken off, you think that is the stumpage value?" Answer, "Yes, sir."

Tyner, an experienced sawmill man, estimated the quantity of the removed timber at 125,000 to 150,000 feet. He was asked its worth per thousand feet. He replied "Around fifteen dollars." He did not say whether he meant as finished lumber or at the stump. We hardly see how the witness could have meant that the value of finished lumber in 1945 was fifteen dollars per thousand. However, taking the stumpage value at ten dollars per thousand, and figuring the quatity at the

lowest estimate given by Tyner, the value at the stump would have been $1,250.

That was all of the testimony on the question. Koonce sold the timber on the stump. He flatly refused, when on the stand, to say for what amount he sold it or what it was worth. He was asked: "Now Mr. Koonce, you stated to the court you don't know how much you cut or how much you sold or what you got for it?" Answer, "I did."

Suggestion of error overruled.