585 So.2d 683 (1991)
BOARD OF EDUCATION OF LAMAR COUNTY, Mississippi
v.
John T. HUDSON.
No. 07-CA-58804.
Supreme Court of Mississippi.
July 31, 1991.
Rehearing Denied September 18, 1991.
*684 William E. Andrews III, Purvis, for appellant.
Moran M. Pope, III, Pope & Pope, Hattiesburg, for appellee.
Kenneth A. Rutherford, Irene C. Howard, Thomas Price, Alston Jones & Davis, Mike C. Moore, Atty. Gen., Larry E. Clark, Asst. Atty. Gen., James O. Nelson, II, Jackson, for amici curiae.
En Banc.
PRATHER, Justice, for the Court:

I. INTRODUCTION

A.
The Lamar County Board of Education (Board) filed this suit on December 19, 1986, in the Lamar County Chancery Court, seeking to void John Hudson's leasehold of Sixteenth-Section School Trust Land which had been originally leased by another individual for a fee alleged to be unconscionably and unconstitutionally low. Specifically, 3.5 acres of land had been leased by E.S. Myatt in 1956 for ninety-nine years at a one-time fee of $150.00. Hudson acquired 2.5 of Myatt's 3.5 acres for a one-time fee of $45,000.[1] Subsequent to Hudson's acquisition and prior to the filing of this suit, he (Hudson) conveyed approximately .45 of his 2.5 acres; this left him with a leasehold of approximately 1.8 acres, the tract which is the subject of this suit. The Board contended specifically that Hudson's leasehold should be declared void since the original conveyance to Myatt was so low that it constituted a donation in violation of article IV, § 95, of the Mississippi Constitution.
Hudson answered and posited several affirmative defenses including: (1) He was an innocent (bona fide) purchaser (assignee) for value without notice of any alleged defect; (2) Pursuant to the doctrine of equitable estoppel, the Board may not have the lease voided; (3) The Board was guilty of laches; and (4) The law applicable at the time the land was leased was fully complied with and the $150 fee paid was reasonable. Hudson also counterclaimed  seeking a confirmation of the lease or, alternatively, for an account and judgment.
After a hearing on the merits, the chancellor denied the relief sought by the Board and confirmed Hudson's leasehold. From this decision, the Board appealed.
This Court holds that the chancellor erred in view of well established law. Hudson's lease is void on constitutional and other grounds, and the decision is therefore reversed.

B.
On January 10, 1956, the Lamar County Board of Supervisors approved E.S. Myatt's application for a ninety-nine-year lease on 3.5 acres of sixteenth-section land[2] in Purvis. For the lease, Myatt paid a lump-sum fee of $150.00; this breaks down to approximately 46¢ per acre per year.
In 1979, John T. Hudson acquired 2.5 of the 3.5 acres for a one-time fee of $45,000. Hudson then sold improvements  a motel, a gas station, and a home  which were located on the 2.5 acres for approximately $7,500. In 1983, Hudson conveyed a portion of his 2.5 acres to a fast-food restaurant for a one-time fee of $10,000 and a one-third share of the restaurant's profits, which amounted to approximately $93,576 during a subsequent four-year period. This left Hudson with a leasehold of 1.8 acres. In 1986, he subleased to the United States Postal Service a building he constructed; the building was leased for a ten-year period for an annual fee of $27,100 with four five-year options to renew at an annual fee ranging from $29,500 to $39,500.
On December 19, 1986, the Lamar County Board of Education filed suit in the Lamar County Chancery Court and requested *685 that Hudson's lease of the 1.8 acres (on which the Post Office is located) be declared void. As noted in the preceding section, the Board based its request on the state constitution which prohibits donations of public lands.
At trial, Hudson testified that he acquired his leasehold knowing the land was designated "sixteenth section"; however, he also testified that he was unaware of the controversy concerning the constitutionality of "donative" leasing of these lands held by the State in trust. He allegedly lacked awareness  notwithstanding that he had had an attorney do a title search prior to acquiring the leasehold and that he had been involved in land investment (including the acquisition of a leasehold of a seventy-acre tract of sixteenth-section land) all his life. In short, Hudson contended that he was an innocent (bona fide) purchaser (assignee) for value without notice of any alleged defect; therefore, the lease should be deemed valid.
The Board countered that Hudson should be charged with actual or constructive knowledge of the "trust nature" of sixteenth-section lands and the breach of trust which occurred when the 3.5 acres were leased to Myatt in 1956 for a grossly inadequate fee (consideration). The Board noted that Hudson should be charged with knowledge by virtue of the state constitution, numerous statutes, and case law.
The Board and Hudson each presented a real-estate expert to support their respective positions regarding adequacy of the consideration paid by Myatt. James K. Cox testified for the Board; he concluded that the market value of the land in January 1956 was $2,800 and that 65-75% of the market value would have been adequate consideration. Jack T. Geiger testified for Hudson; he concluded that the market value of the land  absent oil, gas, and mineral rights  was $3,575. However, Geiger noted that the one-time fee of $150 should be deemed adequate because it was comparable to the fees paid by other lessees for similarly-situated, sixteenth-section lands. He compared Myatt's lease to others which involved fees of less than 50¢ per acre per year. Geiger also noted that the fee should be deemed adequate because it was established "between willing lessees and willing lessors." All this aside, Geiger contended, without explanation, that the market value of the 3.5-acre leasehold was not important in view of the "prevailing economic and social conditions of the day." The appraisers, according to Geiger, were simply not duty-bound to establish actual market value.
The chancellor "accepted" both experts' opinions as "reasonable" and concluded that "experts, who are also reasonable men [or women], provide ... very little specific guidance." Thus, the chancellor did not resolve whether $150 was adequate consideration. Instead, the chancellor determined that Hudson was an innocent (bona fide) purchaser (assignee) for value without notice of any alleged defect in title of the lease. The chancellor also found: (1) that Hudson detrimentally relied upon the Board's "representation"  from 1956 to 1986  that the Myatt lease was valid; and thus (2) the Board should be equitably estopped from challenging the adequacy of consideration. Finally, the chancellor found the Board to have been guilty of laches.

C.
In sum, the chancellor found for Hudson and confirmed the ninety-nine-year lease for $150. The Board appealed and presented the following issues:
(1) Did the chancellor err by failing to find the consideration for the 1956 E.S. Myatt Lease inadequate and a donation in violation of Section 95 of the Mississippi Constitution of 1890?
(2) Did the chancellor err by holding that John T. Hudson was a bona fide purchaser of the leasehold?
(3) Did the chancellor err by applying the doctrine of equitable estoppel, by finding the Board guilty of laches, and by confirming the lease?

II. ANALYSIS
Understanding the two-hundred-year history of Sixteenth Section School Trust *686 Land is paramount to disposition of the issues in this case. Historical analyses have been published in a plethora of recent cases and, thus, re-publication is unnecessary. See, e.g., Papasan v. Allain, 478 U.S. 265, 268-72, 106 S.Ct. 2932, 2935-37, 92 L.Ed.2d 209, 220-23 (1986) (involving a Mississippi controversy); Hill v. Thompson, 564 So.2d 1, 4-7 (Miss. 1989); see County of Oneida, N.Y. v. Oneida Indian Nations, 470 U.S. 226, 233-37, 238, 246-48, 105 S.Ct. 1245, 1250-52, 1253, 1257-59, 84 L.Ed.2d 169, 178-80, 181, 186-87 (1985); Turney v. Marion County Bd. of Educ., 481 So.2d 770 (Miss. 1985), Tally v. Board of Supervisors of Smith County, 323 So.2d 547, 550 (Miss. 1975); Holmes v. Jones, 318 So.2d 865, 868 (Miss. 1975); Keys v. Carter, 318 So.2d 862, 864 (Miss. 1975); Lambert v. State, 211 Miss. 129, 137, 51 So.2d 201, 203 (1951); Humble Oil & Refining Co. v. State, 206 Miss. 847, 854, 41 So.2d 26, 27 (1949); Pace v. State ex rel Rice, 191 Miss. 780, 798, 4 So.2d 270, 274 (1941); Washington County v. Riverside Drainage Dist., 159 Miss. 102, 131 So. 644, 645 (1931); Jefferson Davis County v. James-Sumrall Lumber Co., 94 Miss. 530, 535-36, 49 So. 611, 612 (1909); Jones v. Madison County, 72 Miss. 777, 800, 18 So. 87, 91 (1885); see also MISS. CODE ANN. § 29-3-1(1) (Supp. 1988).

A. Disposition of All Issues

1.
This Court must first decide whether the Myatt leasehold constituted an unconstitutional donation. See MISS. CONST. art. IV, § 95 ("Lands belonging to, or under the control of the state, shall never be donated directly or indirectly, to private corporations or individuals."); see also id. art. VIII, § 211 ("The Legislature ... shall provide that the sixteenth section lands reserved for the support of township schools ... shall not be sold nor shall they be leased for a longer term than ten (10) years for lands situated outside of municipalities and for lands situated within municipalities for a longer term than ninety-nine (99) years, for a gross sum.").
The Mississippi Legislature has delineated procedures for valuation and leasing of sixteenth-section lands. In short, an estimated value of the land must be provided by three disinterested appraisers. The County Board of Supervisors is then authorized to lease the land for seventy-five percent (75%) of the appraiser's estimate  which must be a "reasonable amount." See generally Hill, 564 So.2d at 7-8; see also MISS. CODE ANN. § 29-3-1 (Supp. 1988) ("Reform Act of 1978" requires inclusion of escalation clauses in sixteenth-section-land leases).
In the case sub judice, the Lamar County Board of Supervisors  upon receiving Myatt's application  appointed three disinterested appraisers to determine the market value of the 3.5 acres. The appraisers concluded, without explanation, that a one-time fee of $150 would be "fair and reasonable" consideration for a ninety-nine-year lease. The Board affirmed the appraiser's conclusion and approved Myatt's application.
As noted in a preceding section of this opinion, the fee Myatt paid breaks down to approximately 46¢ per acre per year on a tract of land whose value at the time of the lease was, according to Hudson's own expert (Geiger), $3,575. Thus, Mississippi's public school system received an annual return of approximately one one-hundredth of one percent (1/100th of 1%) of the appraisal provided by Hudson's expert. Cox's feeble attempt to justify the appraisal of $150  i.e., that the amount was established "between willing lessees and willing lessors, that other sixteenth-section lands were leased for comparable amounts, and that the appraisers were not duty-bound to determine the market value  disregarded controlling legal principles. See, e.g., Hill, 564 So.2d at 9.
Pursuant to common law, the Board, acting as trustee, was unauthorized to lease the 3.5 acres for substantially less than the fair market value. Id. at 9; Tally, 323 So.2d at 550. The spirit of the common law is embodied in this state's constitution which prohibits donation of public land no matter what legislative procedure is mandated. MISS. CONST. Art. 4, § 95 (1890). Koonce v. Board of Supervisors of Grenada *687 County, 202 Miss. 473, 477-78, 32 So.2d 264, 265 (1947) (this Court held that supervisors had no authority to lease sixteenth-section land at such a grossly inadequate price as to violate Section 95 of the Constitution); State v. Dear, 209 Miss. 268, 279, 46 So.2d 100, 104 (1950) (this Court held that it was beyond the power of the Board of Supervisors to sell sixteenth-section timber for such a grossly inadequate price that it amounted to a donation); see also Hill, 564 So.2d at 9 ("This Court knows of no rule of law whereby the substantive prohibition of Section 95 may be violated if only certain forms or procedures are met.").
In sum, the voluminous law applied to the facts of the case sub judice leads this Court to conclude that the Myatt lease amounted to an unconstitutional donation and, therefore, was voidable at the option of the school board. Hill, supra. See also Keys, 318 So.2d at 864 (lease of a 320-acre, sixteenth-section tract for an annual fee of $170 amounted to an unconstitutional donation since the fair market value was $4,000 per year) (citing Saxon v. Harvey, 190 So.2d 901 (Miss. 1966), and Coleman v. Shipp, 223 Miss. 516, 78 So.2d 778 (1955)); Holmes v. Jones, 318 So.2d 865, 869 (Miss. 1975) (sixteenth-section land leased for a grossly inadequate consideration was violative of the state constitution); Edwards v. Harper, 321 So.2d 301, 303 (Miss. 1975) (school lands having a fair market value of $22,500, where leased for ninety-nine years for $400, were deemed donated in violation of the constitution); Tally, 323 So.2d at 550 ("where the consideration paid for a lease [i.e., 40¢ per acre] is so small as to amount to a donation of the property, the lease is void"); Saxon v. Harvey, 190 So.2d 901 (Miss. 1966); Coleman v. Shipp, 223 Miss. 516, 78 So.2d 778 (1955); State v. Dear, 212 Miss. 620, 630-31, 55 So.2d 370 (1951) (sale of sixteenth-section timber by County Board of Supervisors for $500.00 and which was resold for $4,000.00 held, prima facie, consideration was grossly inadequate); Dear, 209 Miss. at 281, 46 So.2d at 105 ("value does not have to be proved with certainty as to the amount in order to show that the consideration is grossly inadequate."); cf. Tally, 323 So.2d at 551 ("We can take judicial notice that little, if any, land in the State of Mississippi could have been purchased on the open market for its reasonable value at such a low price... .").

2.
This Court must now decide whether the "defect" in Myatt's leasehold affects Hudson's leasehold.
The law of this state dictates that, generally speaking, one who acquires real property takes it subject to whatever claims lie against it and whatever title defects may exist (i.e., The purchaser steps into the shoes of the seller.). Hardy v. Wheaton, 374 So.2d 790, 791 (Miss. 1979). However, a purchaser may be deemed "bona fide" if he or she acquired title in good faith for valuable consideration and without notice of adverse claims or existing defects. Collier v. Shell Oil Co., 534 So.2d 1015, 1018 (Miss. 1988).
Applying the law to the facts in the case sub judice, this Court holds that the consideration Myatt paid for his leasehold is so unconscionably inadequate that it defeats any challenge by anyone claiming to be a bona fide purchaser. The title defect cannot be deemed "hidden." Hudson is charged, at the very least, with constructive knowledge of the unconstitutionality of the Myatt leasehold. Peoples Bank & Trust Co. v. L & T Developers, 434 So.2d 699, 708 (Miss. 1983); West Center Apartments, Ltd. v. Keyes, 371 So.2d 854, 856 (Miss. 1979). As stated long ago in Baldwin v. Anderson, 103 Miss. 462, 60 So. 578 (1913):
Inadequacy of consideration, whether in the deed to the purchaser or in the deed to his grantor, is material in ascertaining whether a purchaser shall be charged with constructive notice of defects in the title; and the fact that such consideration is grossly inadequate may under some circumstances alone be sufficient to charge a purchaser with notice of defects in the title... .
... .
A slight investigation would have [provided] him [with] knowledge of the true *688 state of the title; consequently, he must be charged with knowledge thereof, for "whatever is enough to excite attention, or put a party on inquiry, is notice of everything to which such attention or inquiry might reasonably lead."
103 Miss. at 467-68, 60 So. at 580 (citation omitted); cf. Dear, 209 Miss. at 276, 46 So.2d at 103 ("The defendant ... is presumed under law to have known that the Board of Supervisors was selling this timber as agent of the State ... and was in duty bound not to sell the same for a grossly inadequate consideration, virtually amounting to a donation, in violation of Section 95 of the State Constitution."); see also Annotation, 42 A.L.R.2d 1088, 1089-90 (1955); 77 Am.Jur.2d Vendor and Purchaser § 696 (1975). Caveat emptor still reigns. Hill, 564 So.2d at 11 (citing authoritative support).
In sum, this Court holds that, as a matter of law, a one-time leasehold fee of a nominal 46¢ per acre per year is inadequate consideration and is essentially an illegal donation of land held in the public trust. Mere compliance with statutory formalities and procedures does not vitiate substantive violation of constitutional prohibitions. Pursuant to state constitutional dictates, the common law of trusts, and prior decisions of this Court, the chancellor's judgment is reversed and Hudson's leasehold is hereby declared void. See id. at 11-12 ("[T]here has been a century of disregard of this constitutional mandate and of widespread and long continued acceptance of this practice by former officials."); Transamerica Co. v. Paine Supply Co., 194 So.2d 490, 491 (Miss. 1967) ("[W]e know of no way in which custom can change the law as written."); Johnson v. Hinds County, 524 So.2d 947, 955 (Miss. 1988) (same); State Tax Comm'n v. Fondren, 387 So.2d 712 (Miss. 1980) (same).
This case is remanded to the Board for a new determination of the present market value of Hudson's leasehold. During the appraisal process, Hudson shall remain in possession of the leasehold and have the right of first refusal. Hill, 564 So.2d at 12.

3.
Before concluding, the issues regarding laches and equitable estoppel will be addressed summarily. This Court recently iterated that inadequacy of consideration may be challenged in cases involving sixteenth-section leaseholds "entered both before or after the Reform Act of 1978." Hill, 564 So.2d at 13 (citing MISS. CODE ANN. § 29-3-25 (1972)). Restated, well-settled Mississippi law holds "that the state is n[either] subject to any statutes of limitations" nor "chargeable with the laches of its officials." Id. at (citing MISS. CONST. art. 4, § 104; Monroe County Bd. of Educ. v. Rye, 521 So.2d 900, 908 (Miss. 1988); Cinque Bambini Partnership v. State, 491 So.2d 508, 521 (Miss. 1986); Chill v. Mississippi Hosp. Reimbursement Comm'n, 429 So.2d 574, 585 (Miss. 1983); Board of Educ. of Itawamba County v. Loague, 405 So.2d 122, 124-25 (Miss. 1981); Gibson v. State Land Comm'r, 374 So.2d 212, 217 (Miss. 1979); Alexander v. Mayor & Bd. of Aldermen of City of Natchez, 219 Miss. 78, 94, 68 So.2d 434, 441 (1953); Aetna Ins. Co. v. Robertson, 131 Miss. 343, 377, 94 So. 7, 10 (1922); City of Bay St. Louis v. Hancock County, 80 Miss. 364, 371-72, 32 So. 54 (1902); Josselyn v. Stone, 28 Miss. 753, 763 (1855)). Logic therefore dictates that the Board in the case sub judice was not guilty of laches, and the chancellor's decision in this regard is reversed. See Hill, 564 So.2d at 14 ("The principle that a governmental entity is not chargeable with the laches of its officials is also well settled.").
On the other hand, the state and its political subdivisions "may be equitably estopped under the proper circumstances." Monroe County Bd. of Educ. v. Rye, 521 So.2d 900, 908-909 (Miss. 1988); Suggs v. Town of Caledonia, 470 So.2d 1055 (Miss. 1985); Covington County v. Page, 456 So.2d 739 (Miss. 1984); State v. Stockett, 249 So.2d 388 (Miss. 1971). But no estoppel may be enforced "against the state or its counties where the acts of their officers were unauthorized." Oktibbeha County Bd. of Educ. v. Town of Sturgis, 531 So.2d 585, 589 (Miss. 1988) (involving a sixteenth-section *689 lease which this Court declared void).
On at least two occasions, this Court has held:
Private individuals who negligently fail to ascertain the value of their own property may, in the absence of fraud, bind themselves by conveyances thereof for a grossly inadequate price, but this is not true of public officials dealing with property held by the state, either in fee simple or as trustee, and especially as trustee where the price is so grossly inadequate as to virtually amount to a donation, in violation of our State Constitution.
Dear, 209 Miss. at 279, 46 So.2d at 104; Koonce, 202 Miss. at 478, 32 So.2d at 265-66; see also Dear, 212 Miss. at 632, 55 So.2d at 374.
In Pace v. State ex rel Rice, this Court held that:
The State cannot abdicate its duty as trustee of property in which the whole people are interested, such as sixteenth section land held by the state as trustee for schools, any more than the state can surrender its police power in the administration of government and in the preservation of peace and order.
191 Miss. 780, 804, 4 So.2d 270, 277 (1940) (citing numerous United States Supreme Court decisions). The point was repeated in Dear, 212 Miss. at 630, 55 So.2d at 374. See also Hill, 564 So.2d at 14-15 (citing American Oil Co. v. Marion County, 187 Miss. 148, 192 So. 296 (1939); Gift v. Love, 164 Miss. 442, 144 So. 562, 86 A.L.R. 63 (1932); Eastman Oil Mills v. State, 130 Miss. 63, 93 So. 484 (1922); Lancaster v. City of Columbus, 333 F. Supp. 1012 (N.D.Miss. 1971); Reliance Mfg. Co. v. Barr, 245 Miss. 86, 146 So.2d 569 (1962); 28 Am.Jur.2d Estoppel and Waiver, § 127 (1966); 31 C.J.S. Estoppel §§ 142-43 (1964)).
Having held in a preceding section of this opinion that the consideration was grossly inadequate, this Court also holds that equitable estoppel is inapplicable. The chancellor is therefore reversed in this regard. Accord Hill, 564 So.2d at 15.
REVERSED AND RENDERED AS TO VALIDITY OF THE LEASE; REVERSED AND REMANDED TO BOARD OF EDUCATION OF LAMAR COUNTY FOR INITIATION OF APPRAISAL PROCEDURE; REVERSED AS TO CHANCERY COURT COSTS WHICH WERE TAXED TO THE BOARD OF EDUCATION; ALL COURT COSTS TAXED TO HUDSON.
DAN M. LEE, P.J., and ROBERTSON, and McRAE, JJ., concur.
HAWKINS, P.J., dissents by separate written opinion, joined by SULLIVAN, and BANKS, JJ.
ROY NOBLE LEE, C.J., and PITTMAN, J., not participating.
HAWKINS, Presiding Justice, dissenting:
The chancellor found that there was conflicting evidence upon whether the lump sum rental was fair in 1956, and further found that Hudson was an innocent purchaser for value and that the Board of Education was estopped to challenge his leasehold interest. I would affirm.
My views have been set forth in some detail in Hill v. Thompson, 564 So.2d 1, 15 (Miss. 1989) (Hawkins, P.J., dissenting), and will not be repeated here.
Article 8, § 211 of the Mississippi Constitution of 1890 made no distinction between sixteenth section school lands located within and without municipalities. None could be leased longer than ten years for a gross sum, or twenty-five years for a ground rental, payable annually.[1] In 1944 the people *690 of this State amended § 211 to authorize leases of sixteenth section lands within municipalities for 99 years for a gross sum rental. Section 211 as amended in 1944 provides:
Section 211. The Legislature shall enact such laws as may be necessary to ascertain the true condition of the title to the sixteenth section lands in this state, or lands granted in lieu thereof, in the Choctaw Purchase, and shall provide that the sixteenth section lands reserved for the support of township schools, except as hereinafter provided, shall not be sold nor shall they be leased for a longer term than ten (10) years for the lands situated outside municipalities and for lands situated within municipalities for a longer term than ninety-nine (99) years, for a gross sum; provided further that existing leases of the sixteenth section lands situated in the municipalities of the state may, for a gross sum, be extended for a term of years not exceeding 99 years from the date of such extension, but the Legislature may provide for the lease of any of said lands for a term not exceeding twenty-five (25) years for a ground rental, payable annually, and in the case of uncleared lands may lease them for such short terms as may be deemed proper in consideration of the improvement thereof, with right thereafter to lease for a term or to hold on payment of ground rent; ... (Emphasis added)
In 1944, not merely the Legislature, but the people by Constitutional amendment recognized the vast difference between the lease of land for agricultural or grazing purposes, and a town lot. In the former instance, with no further investment except perhaps for fertilizer or fencing, the land will yield a return from crops or cattle. In the latter, there can be no return without investment in buildings and improvements, and it is the building or improvement which provides some return, not the land. Except for a used car lot or an occasional circus or side show tent, a town lot without substantial investment in improvement is of no benefit whatever to the owner.
The people of this State recognized in 1944 that without an amendment to § 211, a death blow would be struck to the towns located on sixteenth section lands. It was manifestly to encourage the people who had invested to remain, not run, and to encourage new investors, that § 211 was amended.
The majority cannot recognize this distinction. With tunnel vision it treats leases of a town lot precisely the same as agricultural land. The cash consideration paid for the lease is and should be the all determinative factor in an agricultural lease or timber deed. In the lease of a town lot, many other factors should apply. Hill v. Thompson, 564 So.2d at 15 (Miss. 1989) (Hawkins, P.J., dissenting).
Section 211 directed the Legislature to pass laws authorizing the lease of sixteenth section lands. 1946 Miss. Laws Ch. 443, § 3, required the board of supervisors in a county to appoint "three disinterested freeholders of the county to be appraisers, whose duty it shall be to appraise and report to the board of supervisors, in writing, the fair market value of such land" without buildings or improvements. (Emphasis added) Upon the filing of the report, the Act required the board of supervisors to "determine whether the same represent[ed] the fair market value of such land." (Emphasis added) Section 4 of the Act required that the gross rent "not be less than seventy-five percent of the appraised value thereof."
By 1948 Miss. Laws Ch. 497, § 5; § 6597-04 of the 1942 Code, the above statutory requirement was significantly changed:
Section 5. When any such lands are situated in municipality and the same become subject to lease the board of supervisors shall appoint three (3) disinterested freeholders of the county to be appraisers, whose duty it shall be to appraise and report to the board their recommendations for a gross sum to be paid *691 should the land be leased for ninety-nine (99) years, or the annual ground rental to be paid should the land be leased for a term of twenty-five (25) years. The board shall determine whether the same be a reasonable amount, subject to appeal to the circuit court by any person interested, provided that the holder of any leasehold of such lands at the date of the expiration of such leasehold shall have a prior right for a period of ninety (90) days from such expiration in which to renew his lease. (Emphasis added)
The Mississippi Legislature, not Mr. Hudson, recognized that the 1946 Act either was not working or would not work in town lots. As is clear from the 1948 Act, which amended the 1946 Act, the three disinterested appraisers were not required to determine the fair market value of the land, but only to recommend a gross sum rental. The board of supervisors is then authorized to determine if this is a "reasonable amount."
Section 211 was the Constitutional section and § 6597-04 of the Code of 1942 was the statute in effect January 10, 1956, when the board of supervisors of Lamar County leased this town acreage to E.S. Myatt. These laws were faithfully followed. The board of supervisors, not Mr. Myatt, appointed three disinterested appraisers with no connection whatever to him. The board of supervisors, not Mr. Myatt, determined that $150 was a reasonable amount for the lease. Whether it was in fact reasonable, neither this Court nor I can possibly ever know, but all that transpired was fully documented, put on the minutes of the board, and duly recorded on the land deed records of Lamar County for the world to see.[2] Nothing was hidden. The 1948 Act was strictly followed.
If this were a case where the statute or § 211 had not been followed to the letter, while I might feel sorry for Mr. Hudson, I would not hesitate to invalidate this lease. The reverse is true, however.
In 1979, twenty-three long years later, during which time Lamar County and the school district assessed and accepted ad valorem taxes from this land and the improvements thereon, and after the lease had exchanged lessees, Mr. Hudson acquired the lease from Mr. and Mrs. N.Q. Hickman. Before purchasing the lease, he employed an attorney to check the title to see if he would have a valid lease. He was advised, presumably by competent legal counsel, that he would be getting a perfectly valid lease. He paid $45,000 for the Hickman's interest. He sold off .45 acres on which an old motel and filling station were located for approximately $7,500. This left him approximately 1.85 acres.
The board of education of Lamar County did nothing to indicate any unhappiness with this 1956 lease from 1979 through 1985. In the interim Hudson executed and paid off several deeds of trust, and still nothing was said. Then, in 1986, Mr. Hudson built a building on the property at a cost of just over $183,000 following a successful bid for a contract to build and lease a building to the United States government for a post office. The board said nothing to him as the lot was surveyed off and the foundation was laid for the building.
It was only in November, 1986, after the building was complete, and Mr. Hudson had $183,000 of his life's earnings invested that the board of education, at the instigation of the secretary of state (as it says) struck. A complaint was filed to declare his lease void.
In the little town of Purvis, population 2,137, the superintendent of education, Mr. Pav, of course knew Mr. Hudson was investing a fortune in a building on sixteenth section land. The attorney for the school board knew it. Every member of the board knew it. Yet none did anything until the building was complete. Then he was given a notice his lease was no good, a complaint was filed to declare the lease absolutely "void," and to assess Mr. Hudson damages. *692 On appeal, the board of education repeatedly argues that the lease is "void" (Appellant's Brief, pp. 8, 9, 21, 25, 30), and concludes by asking this Court to remand the case "for the assessment of damages against John T. Hudson." (Appellant's Brief, p. 33)
Mr. Hudson, 46 years of age at the time of trial in 1987, was born and raised in Purvis. It is difficult to envision a more calloused indifference to a fellow townsman than has been exhibited here.
How could anyone hope, much less expect, after this sampling, that any rational person would invest in improvements on sixteenth section land located in a Purvis?
The majority fully agrees with the board of education that the lease is "void." (Majority Opinion, pp 684, 687.) Of course, if it were void then Mr. Hudson would have no rights whatsoever. Hill v. Thompson, 564 So.2d at 26-27 (Hawkins, P.J., dissenting); Keys v. Carter, 318 So.2d 862 (Miss. 1975); Whelchel v. Stennett, 192 Miss. 241, 254, 5 So.2d 418, 419-420 (1943). Then, on page 687, the majority jumps the track and tells us, not that the lease is "void," but that it is "voidable," never blinking an eye over the considerable distinction between the two.
If this Court has the right to declare a lease void, and so declares it, then it certainly has no authority to say "no," it is merely "voidable." The majority plays the child's game of "Yes, No, Maybe So." The inconsistency does not end there. For, it gives Mr. Hudson the "right of first refusal" on another lease to be executed by Lamar County. (Majority Opinion, p. 688)
Of course, if the lease is void, Mr. Hudson has no rights whatever, as above noted. If the lease is voidable at the option of the board of education, then if there is any such thing as equitable estoppel against a political subdivision as we declared in the recent case of Monroe County Board of Education v. Rye, 521 So.2d 900, 908-909 (Miss. 1988), it most certainly applies here. See also, Covington County v. Page, 456 So.2d 739 (Miss. 1984).
Yet, incredibly the majority tells us that the board is not estopped, but has a right to declare this "voidable" lease "void." Well, if the board has the right, as the majority tells us, to avoid this lease, then Mr. Hudson after the board exercises such right has no rights whatever under the lease. A "voidable" contract which has been repudiated by the innocent party is thereafter void, a nullity and of no effect whatever. Turner v. Wakefield, 481 So.2d 846 (Miss. 1985).
Not, however, according to the majority. By special dispensation the majority gives Mr. Hudson the "right of first refusal" under a new lease to be executed the same as if he owned a perfectly valid lease which had expired under the terms of Miss. Code Ann. § 29-3-63 (1972). This statute gives no leaseholder of a void or voidable lease any "right of refusal." The majority has no authority whatever to grant a right not granted by statute. Does the majority have the authority to grant special dispensation to these hallowed trust lands? It thinks it does, even though it is clearly not authorized by Miss. Code Ann. § 29-3-63 and is in contravention of Miss. Code Ann. § 29-3-107.
How can a party who, pursuant to a right to avoid a voidable contract, somehow be obligated to treat it as a perfectly valid contract in which on expiration the other party is given the right of first refusal on any renewal? The majority is making the school board do this very thing.
The majority is trying to be kind to Mr. Hudson following this evisceration of his lease. Perhaps he should be grateful. He may prefer a muddled uncertainty, a slow bleed to the guillotine.
Is the lease void? Yes.
Well, no.
Is the lease voidable? Yes.
But will Mr. Hudson still have the right to renew the lease? Yes.
I wish the Court well upon that occasion in the not too distant future when perforce it will be obliged to address the muddle the majority now enters with unblinking eye.
Reiterating, if this lease is "voidable" as the majority at the last chooses, then it is *693 elementary law that the chancellor correctly held the board estopped to challenge it. Monroe County Board of Education v. Rye, 521 So.2d at 900.

ANOTHER REASON TO CONFIRM
As above set out, there is no question in this case but that Mr. Myatt in applying for a lease of this land in January, 1956, and the board of supervisors in leasing it to him scrupulously followed § 211 and 1948 Miss. Laws Ch. 497, § 6597-04 of the Mississippi Code of 1942, the only laws in effect governing the leasing of sixteenth section lands within municipalities. 1978 Miss. Laws Ch. 525, § 39, Miss. Code Ann. § 29-3-103 governs confirmation of such leases in chancery court, and what is necessary to be proved in order to entitle the leaseholder to a decree confirming his lease:
If it is clearly proven that the requirements of law regulating such leases or extensions thereof were complied with, the proper relief shall be granted even though the records contain no such affirmative showing. The party claiming title under such lease or extension thereof shall be entitled to the benefits of this section whether the suit be filed by him or by the school district, as required by this chapter.
In this case there is no question whatever but that it was "clearly proven" that the requirements of "law regulating such leases," § 211 of the Constitution, and 1948 Miss. Laws Ch. 497, § 6597-04 of 1942 Code, were scrupulously followed in the 1956 lease to E.S. Myatt. The majority makes no pretense otherwise.
Unless the majority chooses to declare Miss. Code Ann. § 29-3-103 unconstitutional, then Mr. Hudson's lease must be confirmed.
For these reasons, I respectfully dissent.
SULLIVAN and BANKS, JJ., join this opinion.
NOTES
[1] Hudson actually acquired the 2.5 acres from assignee N.Q. Hickman. Whether Hickman acquired the acreage directly from Myatt or from one of Myatt's assignees is unclear but irrelevant to the disposition of this case.
[2] The land Myatt leased is a flat parcel with frontage on U.S. Highway 11 and School Street.
[1] Section 211. The legislature shall enact such laws as may be necessary to ascertain the true condition of the title, to the sixteenth section lands in this state, or land granted in lieu thereof, in the Choctaw purchase, and shall provide that the sixteenth section lands reserved for the support of township schools shall not be sold, nor shall they be leased for a longer term than ten years for a gross sum; but the legislature may provide for the lease of any of said lands for a term not exceeding twenty-five years for a ground rental, payable annually; and, in case of uncleared lands, may lease them for such short term as may be deemed proper in consideration of the improvement thereof, with right thereafter to lease for a term or to hold on payment of ground rent. ... (Emphasis original)
[2] I can live with the injunction that the children must suffer for the sins of their fathers, but it appears to me we ought to be absolutely sure that what the forefathers did was indeed a sin before we penalize those who follow. There is no possible way for the majority to know all the circumstances of a 43-year-old lease.