Hester et al. *v.* Crisler.

36   681
o72   795

JOHN HESTER et al. *v.* GEORGE W. CRISLER.

1. SCHOOL LANDS: TITLE TO THEM VESTED IN THE STATE.—The right and title to the sixteenth sections, reserved from sale in Mississippi Territory by the Act of Congress of 1803, were not vested by that act, or any subsequent act of Congress, prior to the Act of the 19th May, 1852, either in the State or the inhabitants of the townships, but remained in the United States.

2. SAME: SALES OF: RATIFICATION BY ACT OF CONGRESS.—By the Act of Congress of the 19th of May, 1852 (amended by the Act of 3d March, 1857), the sales of all sixteenth sections theretofore made in this State by authority of the legislature were ratified and confirmed, and authority given to the State to sell all those remaining unsold, with the consent of the inhabitants of the townships; a sale, therefore, of a sixteenth section made prior to the passage of that act, though in violation of the State law, but subsequently ratified by an act of the legislature, is ratified and confirmed by the aforesaid act of Congress, and vests a good title in the purchaser.

ERROR to the Circuit of Rankin county. Hon. John Watts, judge.

*W. P. Harris*, for plaintiff in error.

*W. C. Harper*, contra.

HARRIS, J., delivered the opinion of the court.

The declaration in this case contains two counts; the first, under the statute for cutting timber, and the second an amended count in trespass *quare clausum fugit*. The main object of the action is to test the validity of the title of defendant in error. Several errors are assigned, which we do not deem it necessary to notice, as they do not affect the merits of this controversy, and could not authorize a reversal of the title of plaintiffs, or rather their right to maintain this suit, has been divested by the Act of 1846, and the subsequent act of Congress, in favor of defendant.

The land in dispute is part of a sixteenth section, reserved from sale for the support of schools in the township, by the Act of Congress, 3d March, 1803. The government of the United States, after the passage of this act, retained the title to the lands thus reserved, and continued to exercise dominion over them during the

territorial condition of Mississippi. On the 9th January, 1815, an act was passed by Congress, authorizing the territorial county courts to appoint not over five agents, to lease (in order to their improvement) the sixteen sections in each county, and to apply the proceeds for education in each township, and to no other use, the leases to expire on the 1st of January next, after the admission of the territory as a State. See 3 Peter's Comp. 163.

Immediately after the organization of the State government, the legislature, on the 5th February, 1818, authorized " the trustees of the county court of each county to take charge of the lands *given* by the United States to the State of Mississippi," and to provide for the erection of schools; also, to lease said lands, and to dispose of the funds " according to the terms of *donation*, as prescribed by the acts of Congress relative to the same." No lease to be for a longer term than three years.

By the Act of the 9th January, 1824, the resident heads of families in each township were authorized to elect, for one year, five trustees, residing in the township, as trustees of schools and school lands, to preserve lands and timber from waste, to lease lands for a term not longer than five years, and appropriate the proceeds towards school purposes, &c.

The legislature continued from time to time to exercise control over these lands in this manner, until the passage of the Act of 23d February, 1833, when provision was made for leasing these lands for ninety-nine years.

Under this act, the trustees in each township, deriving their authority solely from this State, under the acts of the legislature, have claimed to exercise authority over the sixteen sections, without any title whatever having been granted out of the government of the United States, either to the State or to the townships, or to the trustees, until the passage of the Act of Congress, of the 19th May, 1852, subsequently amended by the Act of the 3d March, 1857. These acts ratified all previous sales of these lands, made by the authority of the State, and authorized the State to sell all such reserved lands, with the consent of the inhabitants of such township, to be obtained as the legislature may direct.

In the case before us, it is admitted the land in dispute was sold by persons claiming to exercise the office of trustees of said town-

ship; that the defendant in error derives his title regularly from the purchaser, and that the purchase-money has been paid. It is insisted, however, that the sale was void; that the trustees were in fact not regularly such; that they had no power to sell the land; that the consent of the resident heads of families in the township was never obtained prior to said sale, and that the prerequisites to the exercise of the special limited power of sale never having been complied with, the whole proceeding was a nullity.

The record, however, shows that, upon the petition of a majority of the resident heads of families in said township, the Legislature of 1846 passed an act, ratifying and confirming said sale, 2d March, 1846.

This act, taken in connection with the Act of Congress of the 19th May, 1852, ratifying and approving sales made prior thereto, by the authority of the Legislature of the State of Mississippi, in the same manner and to the same extent as though the same had been in force at the date of such sales, presents the question for decision here.

It is apparent from an examination of the various acts of Congress, that until the passage of the Act of 1852, the government of the United States retained the legal title to the land in controversy, as well as all other sixteenth sections reserved from sale (in this State), by the Act of 1803, for the support of schools in the townships. It is equally clear that, whatever may have been the intention of Congress, or the benevolent purposes of the Act of 1803, no power was ever conferred by any direct proceeding or act, upon either the State, the township, or the trustees, to carry into effect the purposes of that act, after the Act of 9th January, 1815, until the Act of the 19th May, 1852.

And it is by virtue of this last act *alone*, that "the inhabitants of the township or district" acquired the right to consent or not, to the sale or lease of these lands, or any other right. This act *ratified and approved* all sales previously made by State authority, and could not, therefore, have intended to require the assent of the inhabitants, as a prerequisite to its operation. The lands in question having been sold long prior to this act, whether regularly or not, are not subject to that provision, if the sale was sanctioned by the authority of the State.

Whatever the State of Mississippi may have supposed, nothing can be more certain than that she held no title, legal or equitable, to these lands, for herself or in trust, until the Act of 1852. And before then her authority, except so far as it has been sanctioned and ratified by the government of the United States, by that act and the Act of 1857, had been permissive, *sub silentio*, and was but an assumption.

The reservation from sale for the support of schools in the townships in 1803 (fourteen years before the State of Mississippi had an existence, and long before any township in its limits was settled), could not be regarded as a grant to the State, or to such township, either directly or in trust. Indeed, it is apparent from the subsequent action of Congress in 1815, that these lands were regarded as under the control of the government of the United States *at that period.* There was not even a *trust* created by the Act of 1803, for the very sufficient reason, that neither the trustee nor the *cestui que trust*, now supposed to have been contemplated by the act, were then in existence.

If, therefore, the State of Mississippi, by her Act of 1846, saw fit, so far as she had power, to ratify an invalid sale of lands, by persons wholly without power or right to make such sale, and the government of the United States, in whom is the legal title, thinks fit to ratify and approve what Mississippi has authorized, it is not perceived that any one else has the right to dispute the validity of their respective acts, or the title thus confirmed.

Regarding the title of the defendant under these acts of Congress as perfect, we think the verdict of the jury was right, and that the judgment should be affirmed.