JEFFERSON DAVIS COUNTY v. SIMRALL LUMBER COMPANY.

[49 South. 611.]

1. SCHOOL LANDS. *Sixteenth sections. Title in state.*

The title to the sixteenth-sections school lands is in the state, in trust for the support of the public schools of the township in which the same are respectively situate.

2. SAME. *Waste. Actions for. Counties.* Code 1906, §§ 4695–4716.

Code 1906, §§ 4695–4716, conferring on the counties control of the sixteenth sections of school lands, confers on them all powers necessary to carry out the purposes of the statute, and a county may sue for waste committed in cutting timber on such lands within its borders.

3. SAME. *Delegatus non potest delegare.*

Counties are mere political subdivisions of the state, created to act for the state in local matters, and the rule forbidding the delegation of a delegated power does not prevent the state from acting through them in dealing with sixteenth-sections school lands.

4. SAME. *Leases. Rights of lessee. Waste.*

A lessee of sixteenth-section school lands may in good faith clear up for cultivation such portions of it as a prudent owner in fee would clear for that purpose, but he must leave enough timber for the necessary permanent use and enjoyment of the reversion.

5. SAME. *Good faith. Cutting timber.*

The good faith of a lessee of sixteenth-section school land in clearing up portions of it for cultivation is to be determined, if ques-

tioned, by a jury, and the jury must determine to what extent he may cut timber from the facts existing at the time.

**6. SAME.** *Same. Commercial purposes.*

The cutting of timber for commercial purposes from a sixteenth-section school land leasehold is waste, notwithstanding a claim that it was cut for agricultural purposes.

FROM the circuit court of Jefferson county.

HON. ROBERT L. BULLARD, Judge.

Jefferson Davis county, appellant, was plaintiff in the court below; the lumber company, appellee, was defendant there. From a judgment in defendant's favor the plaintiff appealed to the supreme court.

The facts are stated in the opinion of the court

*Livingstone & Milling* and *J. O. Cowart,* for appellant.

The testimony of appellee showed that they bought, cut, manufactured into timber and sold the timber solely for commercial purposes, while the testimony of Tyrone, the real vendor, shows that he intended and still intends to denude the lands of all of the timber.

It is manifest from the evidence that the timber was bought and sold for commercial purposes and without any thought on the part of the buyers or sellers of putting the lands into immediate cultivation.

It was held in the case of *Warren County v. Gans,* 80 Miss. 81, 31 South. 539, that when the tenant cuts timber in the process of clearing the land for immediate cultivation, he can appropriate it or its profits to his own benefit, but could not cut the timber for sale without making himself amenable for waste. When the timber is cut by the tenant or others unnecessarily or unlawfully, the right of the reversioner or remainderman at once attaches, and he may bring an action on the case in the unture of waste for damages. Whether the tenant cut timber unnecessarily upon a claim of doing so for reasonable estovers or for the cultivation of the land and whether sufficient wood and

timber were left for the permanent use of the inheritance are questions for the decision of the jury.

The fact that the appellees purchased the timber in controversy by warranty deed without limitation as to time in which to remove it made them tenants for years of the same and it was waste for them to cut the timber under any circumstances for commercial purposes.

For a history and complete exposition of the principles of law underlying this case we cite the following authorities; *Learned v. Ogden,* 80 Miss. 769, 32 South. 278; *Moss Point Lumber Co. v. Harrison County,* 89 Miss. 448, 42 South. 290; *Warren County v. Gans,* 80 Miss. 76, 31 South. 539.

*Hathorn & Hearst,* for appellee.

The declaration does not show nor does the evidence show that the county ordered or authorized the institution of this suit.

There is nothing in the record to show that the county had a right to bring this suit, that is, that it was the proper party, to maintain this action, even though the defendants were guilty of waste; because there is nothing to show that the county had any interest or property rights in the remainder of the property in controversy.

The right to sue for damages in the nature of waste, which is the action here, in a court of law is enforcible only by the party holding the vested legal title to the reversion or the remainder of the estate for years.

In support of this doctrine we cite Tiedman on Real Property, 2d ed. sec. 81, 2; Kent's Commentaries, 9th ed. vol. 4, pp. 83-4; Enc. P. & P. vol. 22, p. 1096; Am. & Eng. Ency. Law. vol. 30, pp. 275-6, Adams Equity, p. 208; Am. Dig. vol. 48, p. 2127; Am. Dec. vol. 72, p. 721. And we especially call the the attention of the court to the case of *Warren County v. Gans,* 80 Miss. 76, 31 South. 539, as authority on this point and quote from the opinion in that case the following significant language: "When the timber is cut by the tenant or others unnecessarily

or unlawfully, the right of the reversioner or remainderman at once attaches, and he may bring his action on the case in the nature of waste for his damages," etc.   We also direct the attention of the court to the case of *Moss Point Lumber Company v. Harrison County*, 89 Miss. 448, 42 South. 290, especially to the learned opinion of Mr. Justice MAYES rendered therein, in which he quoted the opinion of the court in the *Gans case, supra*, literally and adopted it as a part of his opinion.

By the cession from the state of Georgia to the United States, April 24, 1802, the United States took title to a large area of land now comprising a part of the state of Mississippi, and in which territory the sixteenth section involved in this suit is located, and this sixteenth section was reserved as school lands for the use and benefit of the inhabitants of the township in which it is located.   Hutchinson's Code, p. 55.

The supreme court of Mississippi in the case of *Jones v. Madison County*, held that the United States, by the Georgia cession, took title to the sixteenth section lands as trustee, and that the state of Mississippi, upon its creation as a state, took the legal title to these sixteenth sections as trustees for the use and benefit of the inhabitants of the townships, each respectively, in which the sixteenth section is situated.   *Jones v. Madison County*, 72 Miss. 777, 18 South. 87.

It follows then as surely as the night follows the day that the title to the reversion of the lands involved in this suit has always been and now is in the state of Mississippi as a trustee.   The state is, therefore, the only party that has authority, as a matter of law to maintain this action.

But it may be contended by appellant that it is authorized by the state to maintain this action.   In answer to this we say, first, that the state held this title as trustee and was bound by all the limitations that an individual would be bound by, and that the state of Mississippi, as trustee, could not delegate its authority to another.   That is to say, the state, by reason of its sovereignty, took no greater rights or authority by a conveyance of

property in trust than an individual trustee would have taken. Of course an individual trustee cannot delegate his power under a trust and we need cite no authority on this point.   We do not think it necessary to argue this proposition at greater length; but we desire to call the attention of the court to the opinion of Chief Justice Whitfield, in the *Moss Point Lumber Company case,* cited *supra,* in which he took occasion to discuss at length and with great force the trust view of this subject.

The state of Mississippi, in keeping with its sacred trust, has never undertaken to authorize Jefferson Davis county to maintain this suit, and to substantiate this we invite the attention of the court to all the statutes and decisions applicable, so far as we know, in this case, and which we fear may have misled appellant in instituting this suit.

Code of 1906, was in force when this action was instituted. Section 4701 of the Code of 1906 provides in part as follows: "The several counties wherein are situated any of such lands (meaning sixteenth sections) have, through their respective boards of supervisors, under the general supervision of the land commissioner, jurisdiction and control thereof," etc.   The only authority conveyed to the supervisors in this section is conveyed in the words "Jurisdiction and Control."   These words do not carry with them the right to sue and under them the board of supervisors took no right to prosecute this suit.   The word "Jurisdiction" confers the right to determine disputes and matters of controversy; the word itself means literally an announcement of the law and carries with it the idea of a judicial body.   It pertains only to those bodies and officers who have authority to sit in judgment and to try causes.   It in no sense carries with it the right to litigate.   The word control carries with it only the authority to direct and manage and supervise, as an illustration the school teacher has a right to control the school, the conductor has a right to control his train; but no one would contend that either of these could bring a suit with reference to the property over which he has no control.

The court was correct in giving the peremptory instruction for the appellees not only for reasons above given but as well because the evidence was not sufficient to establish the amount of timber cut by appellees nor its value, and because the uncontradicted evidence offered on behalf of the defendants shows that whatever timber was cut by the defendants was cut under such circumstances that it did not constitute waste.

SMITH, J., delivered the opinion of the court. ·

"Jefferson Davis County, plaintiff, by its board of supervisors," instituted suit in the court below to recover from appellee damages for waste alleged to have been committed by appellee in cutting timber from sixteenth section land. Judgment was rendered in favor or the defendant, and plaintiff appeals to this court.

The right of the county, or its board of supervisors, to institute a suit of this character, is challenged on the ground that an action for waste can only be brought by the owner of the fee, the party having the right to the reversion; that such title and reversion of sixteenth section land is in the state; that the state has never authorized counties, or the boards of supervisors thereof, to institute such suits; and, if it has, to do so was beyond the power of the state. The title to sixteenth section land is in the state; but it holds same in trust for the support of the public schools of the township wherein the same is situated. Chapter 129 of the Code of 1906, and particularly section 4701 thereof, confers upon the several counties, through their respective boards of supervisors, under the general supervision of the land commissioner, jurisdiction and control of sixteenth section land, to be exercised, of course, within the terms of the original trust, and imposes upon them the duty of collecting all funds arising from such lands. This grant of jurisdiction and control, coupled with the duty to collect funds, necessarily carries with it all powers necessary to carry out the purpose of the grant, one of which necessarily is the power to institute suit for collection

of such funds. To do this was clearly within the power of the state. This, in fact, was not a delegation of power within the rule of *"delegatus non potest delegare."* A county is a political subdivision of the state, created for the purpose of acting for the state in local matters, whose powers are exercised by a board of supervisors. The state, in thus dealing with sixteenth section land, acts through one of its own, and most appropriate, governmental agencies. For such purposes, and within the power conferred upon it, the county is the state.

Coming, now, to the case on its merits, the facts are that on the 16th day of January, A. D. 1906, appellee purchased from the lessee of the land in question the timber thereon by means of the following contract: "In consideration of $1.00 in hand paid and the further sum of $16.50 per acre, to be paid as hereinafter mentioned, I hereby grant, bargain, sell, convey, and warrant unto James-Sumrall Lumber Company all of the timber being, lying, standing, and being on the following described land: E. ½ of N. E. ¼ and S. E. ¼ section 16, T. 7, R. 19 west, Lawrence (now in Jefferson Davis) county, Mississippi. It is here understood that said timber shall be paid for in the following manner: On commencing on the said timber after this date, the said James-Sumrall Lumber Company agrees to pay for eighty acres at the said rate of $16.00 per acre; then thereafter, until all of said timber has been cut, the said James-Sumrall Lumber Company agrees to keep forty acres paid for in advance of the forty they may then be cutting on, together with the right at all times from the date thereof of ingress and egress upon said lands to cut down and remove said timber therefrom; and also I grant to said company, their successors and assigns, for the consideration aforesaid, a right of way over, through, and across said property, or any part thereof, to construct, maintain, and use logging railways, or tram roads, or dirt roads, with the right to construct, maintain, and use spur tracks or roads over through, and across said land continuously for the purpose of removing the timber now owned

or to be acquired by said company from said and all lands adjacent to the above-described land."

Appellee, after the execution of this contract, commenced to cut and remove the timber from said land, so that on November 27, 1907, the date of the filing of this suit, practically all of the merchantable timber had been removed from about two hundred acres thereof. This timber was cut by appellee on its part for purely commercial purposes, and the reason that it did not remove same from the remainder of the land was that it "did not know what would be the outcome of it." The lessee, or her husband, who acted for her, claimed that he made this contract with appellee for the purpose of having the land cleared for cultivation, and that it was his intention "to clean up" the remainder thereof; that about eighty acres of it were put in cultivation in 1907, and at the time of the trial about two hundred and fifteen acres of it had been put in cultivation; and that a part of the lumber manufactured by appellee from the timber obtained from this land had been purchased by him to use in building fences and houses thereon. At the close of the evidence the court instructed the jury to find for the defendant, and there was a verdict and judgment accordingly.

In *Warren County v. Gans,* 80 Miss. 76, 31 South. 539, and *Lumber Co. v. Harrison County,* 89 Miss. 526, 42 South. 290, 873, it is held that a tenant of sixteenth section lands "may clear up for cultivation such portions of it as a prudent owner in fee would clear for that purpose, provided he leaves enough timber and wood as may be necessary for the permanent use and enjoyment of the inheritance." He must do this, however, in good faith. Such good faith is a question for the jury, which being established, it is for the jury also to say to what extent he may cut timber before he is guilty of waste, in both instances under the direction of the court as in other cases. Whether or not an act on the part of the tenant constitutes waste is determined by the facts and conditions which exist at the time the act is committed, and wherever the evidence in a particular case

shall show the fact to be that timber was cut and sold from a sixteenth section leasehold really and actually for commercial purposes, no subsequent subterfuge or pretense, under cover of which it shall be claimed that it was cut and sold for agricultural purposes, will be tolerated by the courts.

The giving of the peremptory instruction, therefore, was error.

*Reversed and remanded.*