McRAE, Justice,
for the Court:
This case, challenging whether the State of Mississippi and the Lauderdale County School District had title to sixteenth section land, comes to this Court following judgment in favor of the Lauderdale County School District in the Chancery Court of Lauderdale County. On June 3, 1986, the Lauderdale County School District filed its complaint to remove the claim of Otho Brown as a cloud on the title to sixteenth section school trust lands. Brown, cross-claimant, denied that the school district had title to the land and sought an order from the chancery court holding that he was seized of title in fee simple to the land.
The chancery court entered its judgment of September 2, 1987, finding that the Laud-erdale County School District was vested with both legal and equitable title to the land. Finding that the laws of the United States and the State of Mississippi do not support the estate’s claim to title in fee simple in the sixteenth section lands, we affirm the decision of the Chancery Court of Lauderdale *78 County and hold that the Lauderdale County School District possessed both the legal and equitable title to the sixteenth section land.
The issues asserted by both the appellant and cross-appellant for consideration by this Court are reframed as follows:
ESTATE OF OTHO BROWN
1. The sixteenth section land became property of the United States government through the Articles of Cession in 1803.
2. The State of Mississippi leased the land reserved for schools without authority from the federal government.
3. These “leases” were really sales disguised as leases to circumvent the Rule in Shelley’s Case.
4. When the federal government finally authorized sales of the reserved lands, it retroactively conferred title upon all of the dispositions made by the State of Mississippi up until that time by the enactment of 10 Stat. 6 in 1852 by the U.S. Congress, which statute intended to retroactively confer title in fee simple to the estates of those holding 99-year leases on sixteenth section land.
5. The federal government did this with full knowledge that all of the dispositions by the State of Mississippi up until that time had been 99-year “leases.” Therefore, when it referred to “sales” in the statute, it was talking about the leases.
6. The Mississippi state law, which was enacted thereafter to govern the disposition of the school lands and to mandate that approval must be sought from the inhabitants of the townships before a valid sale could take place, applied only to prospective sales rather than to retroactive sales, because the State did not have any authorization to make rules as to those sales, since they were under federal control.
7. Whether the Court in Hester v. Crisler, 36 Miss. 681 (1859), was correct.
LAUDERDALE COUNTY SCHOOL DISTRICT
1.The history of the sixteenth section lands in Mississippi predates the Articles of Cession of 1803. To fully understand the Articles of Cession, it is necessary to examine the phrase “with the same privileges and in the same manner as if provided for” in the Ordinance of 1787, and that the sixteenth section lands were to be held in trust for the inhabitants of the townships by the states.
2. The federal government had no power over sixteenth section lands except to authorize the states to sell, if they wanted to, the reserved lands.
3. Because Mississippi was the trustee of the lands and maintained control of them, when the state rule indicated that a vote of the inhabitants of each township was needed to authorize a sale, this requirement was retroactive as well as prospective.
4. As a result of the decision in Jones v. Madison County, 72 Miss. 777, 18 So. 87 (1895), overruling the Hester v. Crisler case, the Jones Court did, in effect, more research on the topic. Since Jones is the latest disposition of the law to be followed in this case, Brown’s ancestors had no authority from the inhabitants of the township and, therefore, held no title.
FACTS
To fully understand the issues in this case, one must venture on an historial odyssey that spans over two hundred years. This case was one of some thirty filed by the Lauderdale County School District, by and through its Board of Education, to require those entities which had leased sixteenth section properties held by the county, to sign new leases. Prior to May 19, 1852, county officials of Lauderdale County, Mississippi, had leased the subject property for a 99-year period. The Board of Supervisors of Laud-erdale County executed a new sixteenth section land lease when the previous one expired, on June 8,1957, leasing the real estate to the Estate of W.S. Brown (the appellant’s predecessor in title) for a period of twenty-five years, commencing on June 1, 1957, for the total consideration of $240.00. The 1957 lease expired by its own terms, and the Estate declined to renegotiate the lease, asserting instead a claim of fee simple ownership in the lands.
*79 At the hearing held June 12, 1987, no testimony was presented. Instead, the parties agreed to rely upon pleadings and general stipulations. The chancery court rendered its decision in favor of Lauderdale County, decreeing that it held both legal and equitable title to the sixteenth section land and denying the Estate’s claim.
A summary of the historical background of sixteenth section lands and how they came into being is crucial to an understanding of the dispute as to whether any lessees could possess a fee simple title to the properties. Historical investigation reveals that the Estate’s claim to fee simple title is unfounded for two reasons:
(1) The Ordinance of 1787 required that the sixteenth section of each township in the Western Territory be held for the purpose of education. In 1802, the Articles of Cession between the State of Georgia and the United States government gave the United States control over the lands which now compose the states of Alabama and Mississippi, which states were to be admitted in the same manner and with the same privileges as those embodied in the Ordinance of 1787; and
(2) In 1852, Congress authorized an act which required the inhabitants of the townships to consent to sales or leases of sixteenth section lands for the sales to be valid. Congress further retroactively ratified all sales made previously “to the extent as if [the] act had been in force at the time of the sales.” Thus, in order for a valid sale to have been made prior to 1852, as the Estate alleges its sale was, the sale must have been made with the authorization requirement that the inhabitants of the townships consent to the sale. Since the State of Mississippi held title to the sixteenth section lands in trust for the inhabitants of the state and the inhabitants never approved any type of sale to Brown’s predecessor in title, it is impossible for the Estate to now claim title in fee simple to these lands.
LAW
The United States Supreme Court, in Papasan v. Allain, 478 U.S. 265, 269-71, 106 S.Ct. 2932, 2935-36, 92 L.Ed.2d 209, 221-22 (1986), has stated the following with respect to the history of sixteenth section lands:
The history of public school lands in the United States stretches back over 200 years. Even before the ratification of the Constitution, the Congress of the Confederation initiated a practice with regard to the Northwest Territory which was followed with most other public lands that eventually became States and were admitted to the Union. In particular, the Land Ordinance of 1785, which provided for the survey and sale of the Northwest Territory “reserved the lot No. 16, of every township, for the maintenance of public schools within the said township ...” 1 Laws of the United States 565 (1815). In 1802, when the eastern portion of the Northwest Territory became what is now the State of Ohio, Congress granted Ohio the lands that had been previously reserved under the 1785 Ordinance for the use of public schools in the State. 2 Stat. 175.
Following the Ohio example of reserving lands for the maintenance of public schools, “grants were made for common school purposes to each of the public-land States admitted to the Union. Between the years of 1802 and 1846 the grants were of every section sixteen, and thereafter, of sections sixteen and thirty-six. In some instances additional sections have been granted.” (citation omitted). Thus, the basic Ohio example has been followed with respect to all but a few of the States admitted since then.
⅜ ⅜ * # # *
Although the basic pattern of school and grants was generally consistent from State to State in terms of the reservation and grant of the lands, the specific provisions of the grants varied by State and over time. See generally, B. Hibbard, A History of the Public Land Policies 314-318 (1939). For example, in Indiana and Alabama, the school lands were expressly granted to the inhabitants of the townships directly. See 3 Stat. 290 (1816) (Indiana); 3 Stat. 491 (1819) (Alabama). In most of the other grants before 1845, the school lands were given instead to the States but were explicitly designated to be for the use *80 of the townships in which they lay. See, e.g., 2 Stat. 233-234 (1803); 3 Stat. 375 (1817) (same).
* ⅜ * ⅜ * *
The history of the school lands grants in Mississippi generally follows the pattern thus described. In 1798, Congress created the Mississippi Territory, which included what is now about the southern third of the States of Mississippi and Alabama. 1 Stat. 549. In 1803, Congress provided for the sale and survey of all Mississippi Territory lands to which Indian title had been extinguished but excepted “the section number sixteen, which shall be reserved in each township for the support of schools within the same.” 2 Stat. 233-234. In 1804, the Mississippi Territory was extended northward to the southern boundary of Tennessee. 2 Stat. 305. Two years later, Congress authorized the selection of lands in lieu of unavailable Sixteenth Sections in the Territory. 2 Stat. 401 (1806). Eventually, in 1817, Mississippi was admitted as a State.
Papasan v. Allain, 478 U.S. 265, 269-71, 106 S.Ct. 2932, 2935-36, 92 L.Ed.2d 209, 221-22 (1986), later proceeding, Papasan v. United States, No. DC 81-90-B-O (N.D.Miss. Feb. 21, 1989) (breach of trust claim involving Mississippi school land grants held barred in federal court by Eleventh Amendment, but equal protection claim held sufficient to withstand motion to dismiss).
Title to the leased lands was never conferred upon the lessees, inasmuch as the State of Mississippi was the sole entity which could convey title, and it held the sixteenth section lands in trust for the inhabitants of the state. The Ordinance of 1787 “for the government of the territory of the United States northwest of the Ohio river, ... [b]y the third section of that instrument ...” declared that, “religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education ... [should] be ... encouraged.” At the same time, while authorizing the treasury to contract for the sale of the western lands, the Ordinance of 1787 required “the lot 16 in each township ... be given in perpetuity for the purposes contained in the ordinance [religion, morality and education].” 1 Story’s Land Laws, 361, 362.
By the fifth clause of the first Articles of Agreement and Cession between the United States and Georgia, in 1802, by which the United States acquired the right to the territory now comprising the states of Alabama and Mississippi, it was declared that:
That all the lands ceded by this agreement to the United States, shall, after satisfying the above mentioned payment of one million two hundred and fifty thousand dollars to the State of Georgia, and the grants recognized by the preceding conditions, be considered as a common fund for the use and benefit of the United States, Georgia included, and shall be faithfully disposed of for that purpose, and for no other use or purpose whatever_”
That the territory thus ceded shall form a State, and be admitted as such to the Union as soon as it shall contain sixty thousand free inhabitants, or at an earlier period if congress shall think it expedient, on the same conditions and restrictions, with the same privileges, and in the same manner as if provided in the ordinance of congress of the thirteenth day of July, one thousand seven hundred and eighty-seven, for the government of the western territory of the United States....
Articles of Cession 1803.
Sixteenth section land was reserved from sale for the support of schools in the township by the Act of Congress, March 3, 1803. The relevant portion of the act comes in the twelfth section, after detailed provisions with regard to the sale of the lands which would comprise the State of Mississippi.
That all the lands aforesaid, not otherwise disposed of, or excepted by virtue of the preceding sections of this act, shall, with the exception of the section number sixteen, which shall be reserved in each township, for the support of schools within the same, ... be offered for sale to the highest bidder, under the direction of the governor of the Mississippi territory,.... ”
In 1852, the Congress passed a statute which related to the sixteenth section lands *81 located in the State of Mississippi. THE CONGRESSIONAL GLOBE (the predecessor to the Congressional Report) contained a speech made by Mr. Freeman, of Mississippi, the Committeeman in Charge of the bill, which became law as to the purpose of the new statute:
“Mr. Freeman, from the Committee on Public Lands reported back a bill authorizing the Legislature of the State of Mississippi to sell the sixteenth sections heretofore reserved from sale for the use of schools in that State, and to ratify and approve the sales already made” with a recommendation that it do pass.
⅜ * * ⅜ * *
The House is aware that in the survey which have been made of the public lands the sixteenth sections have been granted to the States for school purposes. In the State of Mississippi a large portion of the public lands have been reserved, under the Indian treaties, from sales for the purpose of settling with the Indians, and a portion of the sixteenth sections are upon those lands. They have, however been disposed of, to a considerable extent, by the State of Mississippi. They have been leased for ninety-nine years. Now suits have been brought upon notes payable in one, two, three, and four years, against the purchasers, and those who have leased these lands, and the judicial tribunals of the State of Mississippi have decided that the school commissioners cannot recover those notes, because the purchasers have obtained no title. Why? Simply because the title still remains in the United States and is not in the school commissioners or in the State of Mississippi. And why? Because the only title conferred by the United States was a simple reservation of the sixteenth sections for school purposes. The United States, therefor, it has been decided, have not conferred any title upon the State of Mississippi which the State could confer upon the vendees.
The Brown Estate cited this language to illustrate the point that it was the 99-year leases which Congress considered to have been “sales” when it enacted the statute on May 19, 1852. The statute stated:
“Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Legislature of the State of Mississippi shall be, and is hereby authorized to sell and convey in fee simple, or lease, for a term of years, as the said legislature may deem best, all or any part of the lands heretofore reserved and appropriated by congress for the use of schools within said State, and to invest the money arising from said sales, as said legislature may direct, for the use and support of schools within the several townships and districts of country for which they were originally reserved and set apart, and for no other use, or purpose whatsoever: Provided, Said lands or any part thereof, shall, in no case be sold or leased without the consent of the inhabitants of such township or district to be obtained in such manner as the legislature of said State may by law direct: And provided further, That in all cases, the money arising from the sales of lands within a particular township and district, shall be appropriated to the use of schools within that township and district.
Section 2. And be it further enacted, That sales heretofore made by the authority of the Legislature of the State of Mississippi of lands reserved and appropriated as aforesaid, are hereby ratified and approved in the same manner and to the same extent, as if this act had been in force at the time of said sales.
Statute of May 19, 1852 (10 Stat. 6).
In Hester v. Crisler, 36 Miss. 681 (1859), seven years after the original enactment of 10 Stat. 6, the Mississippi High Court of Errors intended to resolve this question. The dispute in Hester involved a controversy over title to the sixteenth section lands. The Hester Court held:
And it is by virtue of this last act alone [the Act of 1852], that “the inhabitants of the township or district” acquired the right to consent or not, to the sale or lease of these lands, or any other right. This act ratified and approved all sales previously made by State authority, and could not, therefore, have intended to require the assent of the inhabitants, as a prerequisite *82 to its operation. The lands in question having been sold long prior to this act, whether regularly or not, are not subject to that provision, if the sale was sanctioned by the authority of the State.
Whatever the State of Mississippi may have supposed, nothing can be more certain than that she held no title, legal or equitable, to these lands, for herself or in trust, until the Act of 1852. And before then her authority, except so far as it has been sanctioned and ratified by the government of the United States, by that act and the Act of 1857, had been permissive, sub silentio, and was but an assumption.
Id., at 683-684 (emphasis supplied).
In 1895, Hester was overruled in Jones v. Madison County, 72 Miss. 777, 18 So. 87 (1895). In Jones, the Court dealt with whether a purchaser of a ninety-nine year lease, who conveyed to a subsequent purchaser, transferred any title whatsoever if he had not paid the total purchase price in full. The Court went beyond merely answering that question to delve once again into the origin of the title in sixteenth section lands, reaching an entirely different answer from that in Hester. The Jones Court found that the holding in Hester that “the defective lease had been validated ... in the act of Congress in 1852, construing the act of Congress as ratifying and approving all sales previously made by state authority, whether the consent of the inhabitants of the township had or had not been obtained, on the ground that the act could not have intended to require the assent of the inhabitants as a prerequisite to its operation,” was a “manifest misconstruction of the act.” Id. at 796, 18 So. 87. The Jones Court stated:
By its express terms no sale or lease of the lands could be made “without the consent of the inhabitants of such district,” and the section ratifying and approving past sales was not a ratification of all sales previously made; they were ratified and approved “in the same manner and to the same extent as if this act had been in force at the time of said sales. Now, if the act had been in force at the time any particular precedent sale was made, it is manifest that, to be valid, the condition of securing the consent of the inhabitants must first have been complied with. Surely, if congress had power over the subject, it might approve one or all precedent sales, and to such “extent” as it deemed proper, and it is entirely certain that the decision in Hester v. Crisler ignores and nullifies so much of the act as declares the ratification to be “in the same manner and to the same extent as if this act had been in force at the time of the sale.”
⅜ ⅝ ⅜ ⅜ ⅜ ⅝
... The error in Hester v. Crisler is, and it is one going to the very root of the question, that the court accepted the act of congress of 1803 as the original act by which these lands were devoted to school purposes for the benefit of the inhabitants of the townships in which they are situated. Beginning with the postulate that these lands belonged to the United States, to be dealt with at its will, and therefore, that the right of the inhabitants of the township sprang from a donation by congress, the conclusion that the state had only such power as had been given by congress would be a correct one. The mistake in the conclusion arises from the fact that the postulate is erroneous. The right of the inhabitants of the townships to have the lands for school purposes arises, not from the act of congress, but from the act of cession by the state of Georgia of 1802. That state, and not the United States, is the donor. The United States never had the shadow of a right to these lands, save as trustee for the inhabitants of the prospective states which the act itself stipulated should be created.
Id., at 796, 798, 18 So. 87 (emphasis supplied).
Further, the Jones Court considered cases from several other states for guidance, including the State of Alabama which was created from the very same territory which makes up the State of Mississippi, to see how sixteenth section land issues were adjudicated. The Jones Court found that in 1843, the Alabama Supreme Court had a case pertaining to the character and derivation of title to the school lands. Long v. Brown, 4 Ala. 622 (1843). Just as in Mississippi, Alabama pro *83 cured authority to sell the sixteenth section land from an Act of Congress. The state then passed an act authorizing the sale of the lands upon the assent of the inhabitants, to be ascertained by a vote of the qualified electors. In the Long case, the validity of a sale made under the act was challenged upon the ground that the Act of Congress required assent of the inhabitants of the township, while the legislative act authorized sales to be made by the consent of the qualified electors. The Alabama Supreme Court likewise traced the history of sixteenth section lands back to the Ordinance of 1787 and the Articles of Cession in holding that sales must be made by consent of qualified electors, since only the state had the power to authorize changes in the law of sixteenth section land. From this perspective, the Jones Court and the Lauderdale County School District concluded that the grant of sixteenth sections was in perpetuity to the inhabitants of the respective townships; that legal title to the land was in the state, held in trust for the inhabitants of the townships in which the land is situated; and that a sale of the land, pursuant to the act of the legislature, is valid and binding on the inhabitants of the township. The Jones Court concluded:
If the decision in Hester v. Crisler established a rule of property, we should, notwithstanding its manifest error, be strongly inclined to yield to it, upon the rule of stare decisis. But it does not, and the general investigation of the title to school lands now being made under the provisions of the code of 1892, will probably bring under examination many eases in which leases of land have been made under various statutes, both before and since the passage of the act of congress of 1852, in which no provision has been made for securing the consent of the inhabitants of the township.... [W]e overrule the decision in Hester v. Crisler, and all other cases that have since followed it, as to the question here involved and decided....
Jones, 72 Miss. at 804, 18 So. 87.
Once again we resolve that the State of Mississippi always held title to the sixteenth section lands, to be held in trust for the inhabitants of the State of Mississippi, and affirm the chancery court. We hold today, as we held in Jones, that the law which relates to selling the lands only with approval by the inhabitants of the township is retroactive and prospective. Further, because Brown’s ancestors had no authority from the inhabitants of the township, they held no title. In light of the foregoing holding, we affirm the decision of the Chancery Court of Lauderdale County.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN and JAMES L. ROBERTS, Jr., JJ., concur.
BANKS, J., concurs in part with separate written opinion joined by PRATHER, P.J., and SMITH, J.