# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00197-SCT

*ERIC CLARK, SECRETARY OF STATE, STATE OF
MISSISSIPPI*

*v.*

*STEPHEN D. LEE FOUNDATION, A NON-PROFIT
CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/16/2002 |
| TRIAL JUDGE: | HON. JASON H. FLOYD, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ALAN M. PURDIE |
| | JAN F. GADOW |
| | DION JEFFERY SHANLEY |
| ATTORNEY FOR APPELLEE: | KATHERINE S. KERBY |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND RENDERED - 04/03/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., WALLER AND COBB, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     The Stephen D. Lee Foundation, a non-profit corporation, filed a complaint to confirm leasehold

title against Secretary of State Eric Clark requesting that a lease entered into between the Foundation and

the Board of the Columbus Municipal Separate School District covering certain sixteenth section property

be confirmed and ratified.  The Lowndes County Chancery Court entered summary judgment in favor of

the Foundation thereby ratifying the lease.  The Secretary of State appeals.  Finding the subject lease

unconstitutional and created under an improper statutory scheme, we reverse and render.

**FACTS AND PROCEDURAL HISTORY**

¶2.     The property with which we are concerned is situated on Square 17 north of Main Street in the City of Columbus which is part of Section 16, Township 18 South, Range 18 West, Lowndes County, Mississippi.  In 1835, the Trustees of Franklin Academy leased the property to David Wright for 99 years and renewable forever.  On July 15, 1916, the heirs of Stephen D. Lee, successors in title of David Wright and holders of the sixteenth section leasehold title, conveyed the unexpired term of their 99-year renewable forever lease dated August 1, 1821,[1] covering Square 17 to the City of Columbus for the use of the Columbus Separate School District.  On July 23, 1920, seven days prior to expiration, the Mayor and City Council of Columbus, as successors to the Trustees of Franklin Academy, executed a 99-year renewal lease on the property in favor of the City of Columbus for the use of  the Columbus Separate School District on which was constructed the Stephen D. Lee High School and Stephen D. Lee Junior High School.  These school buildings were attached to a preexisting structure on the property, namely, the Stephen D. Lee home built in 1847.[2]

¶3.     On December 14, 1959, a fire destroyed the two school buildings and heavily damaged the home. Having no need for the Lee home and no intention of rebuilding the school buildings and recognizing the potential liability of having a fire-damaged structure in town, the Trustees of the Columbus Municipal Separate School District leased the home on October 11, 1960, to the Stephen D. Lee Foundation, an entity formed by the Association of the Preservation of Antiquities of Columbus and Lowndes County and

---

[1]The 99-year term was to begin from the "dating from the first leasing of lots. . . ."  1830 Miss. Laws 14th Sess., ch. II.

[2]The Foundation describes the home as "an antebellum residential structure with historic Italianate architecture which also served as the home of General Stephen D. Lee, the first President of Mississippi State University."  The home is also a National Historic Landmark.

the Lowndes County Historical Society to preserve the home. The lease, purportedly entered into pursuant to Miss. Code Ann. § 37-7-473, provided for the nominal rental fee of $1.00 per year for five years with certain renewal rights.

¶4.     On April 2, 1997, the City of Columbus, holding leasehold title by virtue of the 1920 renewal, quitclaimed its interest in all of Square 17, except for the portion on which the Columbus-Lowndes Public Library is situated, to the Board of Trustees of the Columbus Municipal Separate School District. The Board then, by resolution dated March 15, 1999, entered into a five-year lease with the Foundation beginning April 1, 1999, at $1.00 per year and renewable for one additional term of five years. The lease expressly provided: "Lessor does hereby lease and rent unto Lessee, *as a donation* pursuant to Miss. Code Ann. §§ 37-7-47,[3] through 37-7-483, the *land* on which the Stephen D. Lee Home, [sic] is located, such land being classified 'commercial land' under the Sixteenth Section Law of the State . . . ." (emphasis added).

¶5.     After correspondence between the respective counsel for the Secretary of State and the School District regarding the legality of the March 15 lease came to an impasse, the Foundation filed its complaint to confirm leasehold title on July 30, 1999. When all of the chancellors in Lowndes County recused themselves, we appointed Judge Jason H. Floyd, Jr., to serve as special judge. The Foundation then amended its complaint, adding that the home was the equitable property of the Foundation and that the leasing of the property was in furtherance of the educational purposes of the School District.

¶6.     The Columbus Municipal Separate School District was thereafter joined as an indispensable party on June 15, 2001. The School District responded that the lease was based on conclusions recited in its

---

[3]There is no Miss. Code Ann. § 37-7-47, so we assume the lease meant to refer to Miss. Code Ann. § 37-7-471.

3

March 15, 1999, minutes with respect to the adequacy of consideration and that the actions of the School District are presumed valid.

¶7. The Foundation moved for summary judgment on November 28, 2001, arguing the instant lease was akin to the leases at issue in the *Lipscomb v. Columbus Municipal Separate School District*, 1996 WL 671715 (N.D. Miss. July 23, 1996), *rev'd*, 145 F.3d 238 (5th Cir. 1998), *aff'd*, 269 F.3d 494 (5th Cir. 2001), federal litigation and requesting ratification of the lease agreement and confirmation of leasehold title. The trial court granted the Foundation's motion for summary judgment and held:

> As the Court previously found, in its Order of February 1, 2000, the only material question of fact remaining is whether or not the compensation provided is considered to be adequate. . . . Specifically, the Court finds that the restoration and renovation of the Stephen D. Lee home; it's [sic] maintenance as a museum and civic, social and community center; and the continued maintenance and operation of the property for civic benefit constitutes adequate consideration.

The Secretary of State now appeals the grant of summary judgment.

## STANDARD OF REVIEW

¶8. We employ a de novo standard when reviewing whether a trial court properly granted summary judgment. *Conrod v. Holder*, 825 So. 2d 16, 18 (Miss. 2002); *Stewart v. Hoover*, 815 So. 2d 1157, 1159 (Miss. 2002); *Bond v. Marion County Bd. of Supervisors*, 807 So. 2d 1208, 1213 (Miss. 2001); *Certain Underwriters at Lloyd's of London v. Knostman*, 783 So. 2d 694, 697 (Miss. 2001).

## DISCUSSION

¶9.     The sole issue raised by the Secretary is whether the trial court erred in granting the Foundation's motion for summary judgment on the premise that the March 15, 1999, lease was based on adequate consideration and was valid.

¶10.    The leasing of sixteenth section lands is predominantly governed by two provisions of the 1890 Mississippi Constitution.[4]  Section 211 provides the time limits on sixteenth section leases:

> The Legislature . . . shall provide that the sixteenth section lands reserved for the support of township schools, except as hereinafter provided, shall not be sold nor shall they be leased for a longer term than ten (10) years for lands situated outside municipalities and for lands situated within municipalities for a longer term than ninety-nine (99) years. . . .

Miss. Const. art. 8, § 211 (1890).  In addition, Section 95 provides:

> Lands belonging to, or under the control of the state, *shall never be donated* directly or indirectly, to private corporations or individuals, or to railroad companies.  Nor shall such land be sold to corporations or associations for a less price than that for which it is subject to sale to individuals.

Miss. Const. art. 4, § 95 (1890) (emphasis added).

¶11.    Sixteenth section lands in general are regulated by Miss. Code Ann. §§ 29-3-1 to -183  (Rev. 2000 & Supp. 2002).  These lands are held in trust for the benefit of public schools under the management of the respective boards of education and supervision of the state land commissioner (now the Secretary of State).  Miss. Code Ann. § 29-3-1(1).  The boards are under the affirmative obligation to "assure that adequate compensation is received for all uses of the trust lands, except for uses by the public schools." *Id.*

---

[4]For a comprehensive analysis of the history of Mississippi's sixteenth section regime by the United States Supreme Court, this Court, and academic commentary, see ***Papasan v. Allain***, 478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); ***Estate of Brown***, 624 So. 2d 77, 79-83 (Miss. 1993) (quoting ***Papasan***); C. Maison Heidelberg, *Closing the Book on the School Trust Lands*, 45 Vand. L. Rev. 1581, 1584-91 (1992).

¶12. The Board of Trustees leased the Lee home and the land on which it is situated pursuant to Miss. Code Ann. § 37-7-471. Chapter 7 of Title 37 establishes the organization and authority of school districts and the boards of trustees of school districts. Sections 37-7-451 through 37-7-457 provide the primary method of disposing property no longer needed for school purposes. Land or buildings owned by a School District may be sold via sealed bids with the property going to the highest bidder for cash. Miss. Code Ann. § 37-7-455. ¶13. In addition, Sections 37-7-471 through 37-7-483 provide for an alternative method of disposition. Under Section 37-7-471, school boards may dispose of land or buildings if doing so will serve certain stated objectives:

> Whenever the school board of any school district shall find and determine, by resolution duly and lawfully adopted and spread upon its minutes (a) that *any* school *building*, *land*, property or other school facility is *no longer needed for school or related purposes and is not to be used in the operation of the schools of the district*, (b) that the sale of the property in the manner otherwise provided by law is not necessary or desirable for the financial welfare of the school district, and (c) that the use of the school building, land, property or other school facility for the purpose for which it is to be sold, conveyed or leased *will promote and foster the development and improvement of the community in which it is located and the civic, social, educational, cultural, moral, economic or industrial welfare thereof*, the school board of such school district shall be authorized and empowered, in its discretion, and upon the conditions set forth in Section 37-7-477, to *sell*, convey, *lease* or otherwise dispose of same for any of the purposes set forth herein. Such sale, conveyance, lease or other disposition shall be made upon such terms and conditions and for such consideration, *nominal or otherwise*, as the school board may, in its discretion, deem proper in consideration of the benefits *which will inure to the school district or the community* in which the school building, property or other facility is located by the use thereof for the purpose for which it is to be sold, conveyed, leased or otherwise disposed of.

(emphasis added). The Board's minutes authorizing the lease tracks the language of Section 37-7-471.

¶14. However, we find compelling the Secretary of State's argument that Chapter 7 of Title 37 does not permit school boards to dispose of sixteenth section lands. The only reasonable interpretation of these

6

statutes is that they apply to property to which the school district actually holds title. School districts do not hold title to sixteenth section lands; rather, title to trust lands was granted by the federal government to, and resides in, the State. *Hill v. Thompson*, 564 So. 2d 1, 6 (Miss. 1989) (citing *Turney v. Marion County Bd. of Educ.*, 481 So. 2d 770, 776 (Miss. 1985); *Tally v. Bd. of Supervisors of Smith County*, 323 So. 2d 547, 549-50 (Miss. 1975); *Lambert v. State*, 211 Miss. 129, 137, 51 So. 2d 201, 201 (1951); *Pace v. State ex rel. Rice*, 191 Miss. 780, 798, 4 So. 2d 270, 274 (1941); *Jefferson Davis County v. James-Sumrall Lumber Co.*, 94 Miss. 530, 535-36, 49 So. 611, 612 (1909); *Jones v. Madison County*, 72 Miss. 777, 800, 18 So. 87, 91 (1895)). A school district simply cannot convey that which it does not own. An example of land which a school district is free to sell or lease, even for nominal consideration pursuant to Section 37-7-471, is land the district acquires in its own name. *See, e.g.,* Miss Code Ann. § 37-7-301(aa) (allowing a school board "[t]o acquire in its own name by purchase all real property which shall be necessary and desirable in connection with the construction, renovation or improvement of any public school building or structure").

¶15.     The ongoing *Lipscomb* class action in federal court addresses leases of sixteenth section lands within the City of Columbus and provides some useful judicial analysis pertinent to the Stephen D. Lee Foundation lease. *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 1996 WL 671715 (N.D. Miss. July 23, 1996), *rev'd*, 145 F.3d 238 (5th Cir. 1998), *aff'd*, 269 F.3d 494 (5th Cir. 2001). In *Lipscomb*, lessees of sixteenth section lands in Columbus sought a declaration that the Secretary of State's attempts at renegotiating their leases violated the Contract Clause, U.S. Const. art. I, § 10, cl. 1. 269 F.3d at 499. The Secretary of State argued that the perpetuation of nominal rental rates through renewals violated Section 95 of the 1890 Mississippi Constitution which, as stated above, forbids the donation of

public property. *Id.* The Fifth Circuit noted that the Legislature in 1830 authorized the trustees of Franklin Academy to make all of the Columbus leases at issue renewable forever. *Id.* at 502. The act, approved December 30, 1830, stated in pertinent part the following regarding renewability:

> That the Trustees of said Franklin Academy, be, and they are hereby authorized to lay off and lease lots, not to consist of more than ten acres each, for the same time, and in like manner, and on like condition with those in the present plan of the town of Columbus, throughout the section; and that said Trustees be, and are hereby authorized to make out all leases for the lots of said section, *for ninety nine years*, dating from the first leasing of lots in said town of Columbus, *renewable forever*.

1830 Miss. Laws 14th Sess., ch. II (emphasis added). Lessees were subsequently allowed to require the trustees of Columbus school lands to execute deeds for less than one-fourth of one acre. 1846 Miss. Laws ch. 143. The Lee home was constructed the next year in 1847.

¶16. The Fifth Circuit held that the current leases held by the lessees were renewals of pre-1890 leases, and the voiding thereof would violate the Contract Clause. 269 F.3d at 514. Applying *Lipscomb* to the instant case, we must conclude that renewals of 99-year leases of Columbus school lands are valid and immune from attack on later-enacted Section 95 constitutional grounds.

¶17. However, the Foundation was not a member of the *Lipscomb* class nor does the March 15, 1999, lease indicate a renewal of a pre-1890, 99-year lease. *See Hill*, 564 So. 2d at 3 (stating that the "Trustee's deed conveyed 'Lot 6' and did not mention the leasehold interest nor the reservation of the service station equipment"). The instant lease of sixteenth section lands is subject to Section 95, and the $1.00 per year rental renders the lease voidable.

¶18. We have consistently invalidated leases on constitutional grounds based on inadequacy of consideration. *See Bd. of Educ. of Lamar County v. Hudson*, 585 So. 2d 683 (Miss. 1991) (finding $150 one-time rental for 99-year lease of 3.5 acres to be inadequate); *Hill v. Thompson*, 564 So. 2d

8

1 (Miss. 1989) (finding consideration of $7.50 for 99-year lease constituted an impermissible donation); *Holmes v. Jones*, 318 So. 2d 865 (Miss. 1975) (voiding lease made to superintendent of education of 150 acres at $.25 per acre per year for 25 years).

¶19. We find the March 15, 1999, lease to the Foundation is voidable as an unconstitutional donation, but the facts and circumstances surrounding its creation are distinguishable from our prior cases nullifying such leases–no one really profited financially from the instant lease. The land and home were initially leased with the noble intention of restoring a heavily-damaged burden on the School District into a National Historic Landmark now protected by federal law. The fact remains that the statutes governing the leasing of sixteenth section lands, while appearing unduly rigid, do endeavor to preserve the property of the trust. While it arguably may have been more advantageous economically to demolish the Lee Home and lease the underlying land for commercial purposes, the house was not demolished and was subsequently restored at great expense.

¶20. We expect that upon the Secretary of State's election to void the instant lease, the Board and Foundation will renegotiate a lease for the underlying sixteenth section land on such terms as are acceptable to the Secretary. It is worth noting that in *Hill*, we remanded for a proper appraisal and held, "Equity dictates, however, that while the appraisal process is in process that appellee shall have the use of the premises in question and the right of first refusal of the new lease and the right to meet the best bid when the rental value is determined."[5] 564 So. 2d at 12. This resolution was subsequently affirmed and applied in *Hudson*. 585 So. 2d at 688. *See Barber v. Turney*, 423 So. 2d 133, 134-36 (Miss. 1982) (explaining appraisal procedure). Also, Miss. Code Ann. § 29-3-63(1) states that a "board of education

---

[5]The Secretary of State's own commissioned appraisal determined the annual rental value of the property to be $5,400.

shall not lease or extend a lease on land classified as industrial or commercial at an annual rental less than five percent (5%) of the current market value, exclusive of buildings or improvements not owned by the school district". Given that Section 29-3-63 allows a rental amount substantially less than the current market value and assuming the Secretary's appraisal of $5,400 per year is accurate, the Board and Foundation should be able to arrive at an affordable rental. As for the Lee home, we see no reason why the Board cannot declare it surplus property and sell it to the Foundation under Miss. Code Ann. §§ 29-3-77 and 37-7-471 through -483.[6]

## CONCLUSION

¶21.    The chancellor manifestly erred in his conclusion that the consideration for the lease was sufficient under the statutes cited. The School Board simply had no authority to lease the property on the terms that it did. Because the $1.00 per year nominal rental is insufficient and amounts to an unconstitutional donation, we reverse the summary judgment in favor of the Stephen D. Lee Foundation, and we render judgment here finally dismissing the Foundation's complaint and this action with prejudice. For the sake of all involved, the Secretary of State and the Board of the Columbus Municipal Separate School District should come to a mutually beneficial resolution and create a lease with the Foundation comporting with constitutional and statutory guidelines on fair terms given the non-profit, civic objectives and means of the Foundation.

¶22.    **REVERSED AND RENDERED.**

**PITTMAN, C.J., SMITH, P.J., COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

---

[6]If the Lee home is conveyed or leased pursuant to Sections 37-7-451 through 37-7-483, the instrument must provide for the automatic reversion back to the school district in the event the property is no longer used for the purpose for which it was conveyed or leased. Miss. Code Ann. § 37-7-477.

**McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**McRAE, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶23.    I concur with the majority's finding that the lease is voidable but I dissent as to the analysis used for that finding and the finding that equity dictates that the Foundation be allowed to continue its lease pending appraisal and be given the right of first refusal upon the execution of a new lease.

¶24.    The sixteenth section land at issue was restored to the hands of the Columbus School District in 1997. Upon this restoration, no other leaseholds or prior ownership of the property acted to cut off the rights and obligations of the school board pursuant to the State's Constitution or statutes. The land was essentially held in trust for the benefit of the Columbus School District's educational purpose. The school board's lease which provided for an annual rental of $1.00 with options for renewal as a "donation;" which amounts to virtual free use of the land; is contrary to our State's Constitution. Section 95 of the Mississippi Constitution of 1890 provides in pertinent part that:

> Lands belonging to, or under the control of the state, shall never be donated directly or indirectly, to private corporations or individuals, or to railroad companies. Nor shall such land be sold to corporations or associations for a less price than that for which it is subject to sale to individuals.

The law is clear. The Columbus School Board could not lawfully execute a lease in favor of the Foundation which purported to be a "donation." Since the lease is contrary to law, the lease is voidable and the Secretary of State was proper in fulfilling his responsibilities by defending this action and in his claim that the lease was void. Furthermore, the $1.00 per year leasehold is unconscionable since the purpose of such trust of land in favor of the school district is to promote the educational needs of the community. The $1.00 per year lease could hardly be considered a financial benefit to the school district.

11

¶25.    I disagree with the majority's finding that equity dictates that the Foundation be allowed to continue its lease pending appraisal and that then it should receive the right of first refusal.  The Foundation entered the lease knowing that it could be challenged.  It entered into the lease at its own peril.  Pending an appraisal, the Foundation should be assessed the commercial lease rate of other property in the area.

¶26.    For these reasons, I specially concur in part and dissent in part.