EASTMAN OIL MILLS *v*. STATE EX REL. ROBERSON, Atty. Gen.

[93 South. 484, No. 22780.]

1. STATES. *Laws prohibiting operation of gins cannot be altered or suspended by state officers.*

The provision of chapter 162, Laws of 1914 (Hemingway's Code, section 4755), that corporations which are prohibited by the act from owning or operating gins must dispose of them within a reasonable time after the passage of the act, cannot be altered, changed or suspended by the act or consent of any officer of the state, and all such corporations that continued to own and operate these prohibited gins after the expiration of a reasonable time from and after the passage of the act did so in violation of law.

2. STATES. *Officers not empowered to authorize continuance of business constituting violation of law.*

State officers cannot grant indulgences authorizing the committal of offenses, and they have no power to authorize the continuance of any act or business which is in violation of law.

3. ATTORNEY GENERAL. *Authorization to operate gins in violation of ·law mere promise of forbearance not binding on successor.*

The attorney-general has no power or authority to grant permission to a corporation to own and operate gins in violation of the provisions of chapter 162, Laws of 1914 (Hemingway's Code, section 4750 et seq.), and his act in attempting so to do amounts to no more than a promise of forbearance on his part and has no binding force on his successor or any other officer having authority to enforce the provisions of the act.

4. ESTOPPEL. *State cannot be estopped by unauthorized acts of its officers.*

The state cannot be estopped by the unauthorized acts of its officers.

APPEAL from chancery court of Coahoma county.

HON. G. E. WILLIAMS, Chancellor.

Suit by the state, on the relation of Frank Roberson, attorney-general, against the Eastman Oil Mills. From a decree imposing a penalty and forfeiting defendant's charter, it appeals. Affirmed.

*J. R. McDowell,* for appellant.

Counsel says that we find ourselves in peril because we had hoped that that Law of 1914, would be declared unconstitutional. Suppose we did entertain such a hope, are we to be driven from the state because we agreed with the attorney-general that instead of multiplying his troubles with useless litigation we would, with his permission, continue as before, unless we could sell our property without too great a loss, and await the decision of the court of last resort upon the validity of the statute which sought to take from us our charter rights?

We are not asking the attorney-general to violate the law, or to give us any rights or privileges, but simply not to take advantage of us while the question was in dispute. We insist that in the light of all this record discloses we should have been given an opportunity, after the attorney-general saw fit to terminate the agreement made by his predecessor to have disposed of the gin property within a reasonable time. If we had known that we would have been dragged into court and driven from the state because we agreed with the state to abide the result of a test case then pending, we would have sought injunction at once. I cannot believe that it is to be the policy of the state to treat its citizens and taxpayers like this.

I have read the Lukens case cited by appellee, but cannot see that it is applicable to the case at bar. There the governor approved an act of the legislature making an appropriation upon an agreement that the beneficiaries would take less than the amount carried by the appropriation bill. He plainly violated the law when he made such

an agreement, as the law said he must approve or disap-- prove legislative acts as passed by the legislature.

Counsel seems outraged because when one of the gins owned by appellant was partially destroyed by fire during the season of 1919-1920 we rebuilt it without his permission. It is admitted we rebuilt it to save the parts not destroyed by fire, and that before we attempted to operate it, we communicated with the attorney-general for the purpose of renewing the agreement had with his predecessor. He had a right to refuse this permission, in which event we could have proceeded to sell the gin as reconstructed, when we could not have sold the salvage at all, and it would have been a dead loss. I can't see how that act hurts us or helps us. If we are to be penalized for owning the gins, the penalty would be not greater because we repaired, improved or rebuilt parts thereof. The penalty is no greater.

In the Cresent Cotton Oil Co. case there was an agreement with the attorney-general that the gins might continue to run. I don't suppose the present attorney-general sought to breach that agreement or insist upon a greater penalty on that account. Since this case was begun, the United States supreme court has upheld the statute under review in the present suit, and we are ready of course to abide that decision if given an opportunity to comply with the law without being driven out of the state, because of our faith in the acts of the attorney-general.

We do not hesitate to say that this court should reverse the decree of the chancellor and now enter an order imposing such penalty as it may think proper in case the appellant shall not within a time to be fixed by the court dispose of its unsold gin and otherwise comply with the law.

*Roberson & Yerger,* for appellee.

Chapter 162 of the Laws of 1914 (Hemingway's Code, sections 4752 to 4756), is the law which appellee claims to have been violated by the appellant. This law is stat-

utory law and provides that a corporation engaged in the manufacture of cotton seed products shall not own, lease or operate a cotton gin in this state, except in the city or town of the location of its cotton oil plant, and that a corporation which shall own, lease or operate a gin in violation of the statute shall be subject to a penalty of not less than one hundred dollars nor more than five thousand dollars, and in addition thereto, shall forfeit its charter as a domestic corporation, and its right to do business in this state if a foreign corporation."

The appellant in its answer to the original bill attacked the constitutionality of the statute in question but the constitutionality of the statute has been definitely determined, not only by our supreme court, but by the supreme court of the United States. *State ex rel. Collins* v. *Crescent Cotton Oil Company,* reported in 77 So. 185, 116 Miss. 398. Appellant devotes more than half of its brief to the proposition that this action is not maintainable against it, because a former attorney-general gave it permission to operate the gins during certain seasons. It is not the purpose of this brief to criticize the acts of any one in connection with this matter, but even if a former attorney-general did give the permission claimed, still it remains that no attorney-general ever gave appellant any permission to rebuild any gin at Rich after it had been burned and the insurance collected thereon.

But, as a legal proposition, we do not believe any officer, attorney-general, or otherwise, can legally give permission to any one to violate the plain letter of a statute; if such permission were given, same could not be set up as a defense by one charged with a violation of such statute. Such an agreement would have no sanction in the law; would be contrary to public policy and void. Estoppel cannot have as a foundation an illegal agreement; contracts cannot vest in parties any rights in contravention of law or public policy. For an able discussion of this proposition, the court is referred to the case of *Lukens* v. *Nye,* 20 Ann. Cases, 158.

No state official could, by agreement permit or otherwise legalize, something that had been expressly condemned by the solemn act of the legislature.

Appellant says in effect that the bringing of this lawsuit was a breach of faith on the part of the state of Mississippi. This the appellee most strenuously denies. There is nothing in the record which justifies any such conclusion. On the other hand, the record plainly shows that if any one was guilty of unbecoming conduct in this matter, that it was the appellant herein. Is there anything in the record which shows that the present attorney-general, or his predecessor, were ever notified of the burning of the gin at Rich in 1919? Absolutely nothing.

Is there anything in the record which shows that either the present attorney-general, or his predecessor, were ever asked by the Eastman Oil Mills for permission to rebuild the gin at Rich? Absolutely nothing. If the appellant was going to rely on the permission given by the attorney-general, why was it that after its gin at Rich was burned, that it did not request the permission of the then attorney-general to then rebuild same.

But, admitting for the sake of argument that there was a binding contract between the Eastman Oil Mills and a former attorney-general with reference to the operation of the gin; still appellant can find no consolation therein, because there is nothing in the records which intimates that in case one of the gins should burn that appellant had had the consent to rebuild same.

Cook, J., delivered the opinion of the court.

This suit was instituted by the state, on relation of the attorney-general against the Eastman. Oil Mills, a corporation chartered under the laws of this state, and domiciled at Jonestown, Miss., seeking to impose on the defendant the penalties prescribed for a violation of chapter 162, Laws of 1914, Hemingway's Code, section 4750 et seq., and from a decree imposing a penalty of one thousand dol-

lars and forfeiting the defendant's charter, this appeal was prosecuted.

The bill of complaint avers that the defendant was a domestic corporation with its domicile and principal place of business at Jonestown, Miss.; that it was engaged in the manufacture of cotton seed products at the place of its domicile; that since 1914, up to and including the time of the filing of the bill, it had owned and operated cotton gins at Belen and Rich in the state of Mississippi; that the ownership and use of said gins at Belen and Rich was unlawful, in that it violated the provisions of chapter 162, Laws of 1914, Hemingway's Code, section 4750 et seq.; that since the passage of said chapter 162, Laws of 1914, the defendant has had a reasonable time within which to dispose of said gins but instead of disposing of same as authorized by law, that defendant has, in open defiance of the law, proceeded to operate, control, and use said gins at Belen and Rich; and that twelve months after the passage of the act of March 28, 1914, known as chapter 162, Laws of 1914, would have been a reasonable time within which the defendant could and should have disposed of said gins under the terms of said act. The prayer of the bill was for the infliction of a fine and the forfeiture of defendant's charter as prescribed by said act.

The answer admits that the defendant is a corporation created, organized, and existing under the laws of the state of Mississippi, with its domicile and principal place of business in Jonestown, Miss., and that for a long time prior to March 28, 1914, and up to the time of the filing of the bill of complaint, it owned, managed, used, controlled, and operated cotton gins at Belen and Rich, Miss., which are locations other than Jonestown, where the cotton oil mill of defendant is located, and where defendant is engaged in the manufacture of cotton seed products, but denies that the ownership or operation of said gins was unlawful and unauthorized by law, and avers that all of the aforesaid business in which it was engaged, including the ownership and operation of said gins, was specially

authorized by its charter of incorporation. The answer further denies that, since the passage of chapter 162 of the Laws of 1914, it has, in open defiance of law, continued to operate, control, and use said gins at Belen and Rich, but avers that a few months after the passage of said act financial conditions in the state of Mississippi, and especially at and near the location of defendant's plants, were greatly depressed because of the low price of cotton due to the outbreak of the European War, and for this reason defendant was unable to sell said gins for anything like a fair and adequate price, and on account of this condition defendant sought and obtained the consent of the then attorney-general of Mississippi to continue to own and operate said gins during the season of 1914-15, and that this consent of the said attorney-general was renewed each year until the close of the ginning season of 1919-20; that during said years from 1915 to 1920, a suit was pending in the chancery court of Sunflower county, Miss., to test the constitutionality and validity of said chapter 162 of the Laws of 1914, and that during the pending of said suit it was agreed between the said attorney-general and the defendant that it might operate its two gins from season to season. The answer further averred that on the 7th day of July, 1920, after the decision by the supreme court of the state of Mississippi of the said case attacking the validity of said chapter 162 of the Laws of 1914, and after said cause had been appealed to the supreme court of the United States, the defendant sought to obtain from the present attorney-general, who succeeded to the office on the 19th day of January, 1920, permission to operate said two gins until such time as a sale of same at a reasonable price could be made, and on the 29th day of July, 1920, the present attorney-general declined to grant such permission, and that since the receipt of such advice from the attorney-general, defendant has not operated either of said gins; that since the passage of chapter 162, Laws of 1914, and all during the time it was operating its said gins by permission of the attorney-general, it sought to sell them

at a reasonable and fair price, but was unable to do so; that since the filing of this suit it had succeeded in selling its gin at Rich at a price several thousand dollars less than its actual value, the entire sale being on credit extending over a term of years; that defendant has not been able to get an offer of anything like a reasonable or fair price in cash or on credit for its gin at Belen, although it was then endeavoring to dispose of said gin at less than half its value. The answer further denies that it has had a reasonable time within which to dispose of said gins, and avers that in the operation of said gins it has sought to co-operate with the chief law officer of the state, and that the operation of said gins had been with the knowledge and consent of the attorney-general, and had been at a time when the validity of the act of 1914 was being contested in the courts, and it was not required to sacrifice its property until the validity of the act had been tested and upheld by the courts, and that under these circumstances it was not required to dispose of its said gins within twelve months after the passage of the said act of 1914, but, on the contrary, averred that if twelve months should be held to be a reasonable time in which to dispose of said gins, then such period of time should not begin to run against the defendant until the 29th day of July, 1920, the date upon which the present attorney-general declined to further permit defendant to operate these gins which had theretofore been operated by special permission of his predecessor in office. The answer then averred that the said chapter 162 of the Laws of 1914 was unconstitutional and void for the reason that it denied to the defendant equal protection of the law guaranteed by the constitution of the state of Mississippi and by the constitution of the United States.

The cause was submitted to the chancellor on bill, answer, and agreed statement of facts; the statement of facts being as follows:

"It is agreed between counsel for the state of Mississippi and the Eastman Oil Mills, complainant and defend-

ant herein, that this cause may be tried upon bill and sworn answer on file, and that the sworn answer of the defendant correctly stated all the facts averred therein, except that it is the contention of the state of Mississippi, that the defendant has had a reasonable time within which to dispose of its said cotton gins at Rich, and Belen, which complainant contends should have been done within twelve months after the enactment of chapter 162 of the Laws of 1914, while the defendant contends that it should have a reasonable time after the 29th day of July, 1920, the date when it was refused permission by the attorney-general to continue to operate its said gins.   This question is for the court to determine.

"It is agreed that in addition to the facts set out in the pleadings, that the gin building at Rich, Miss., belonging to the defendant, was destroyed by fire about the latter part of November, 1919, leaving intact the cotton house, seed house, coal house, platform, boiler, engine and some other small items of salvage; that said gin was rebuilt in the spring and summer of 1920, being completed in August of said year, but that the defendant did not begin the ginning season of 1920 with said gin, not operating it at all during the autumn of said year, but having effected a sale of same on September 8, entirely on a credit, and only a small part of the purchase price has been paid to it.   The defendant claims as his reason for rebuilding said gin that a large loss of the salvage would have been suffered and had to be charged off on the books of the company, since the salvage was useless as it stood and there was only a partial loss by fire, and partial insurance; that defendant decided that the only way to make use of this salvage was to rebuild the plant and continue efforts to sell it, which it did before starting the new season.

"It is further agreed that the gin of the defendant at Belen, Miss., was not operated at all since the spring of 1920, the defendant neither having operated it under its own management, nor leased it to any one else, and that

the defendant has continued and still continues in its efforts to dispose of said gin.

"The only other question for determination is whether or not said chapter 162 of the Laws of 1914 is violative of the constitution of the state of Mississippi, or the constitution of the United States."

Chapter 162, Laws of 1914, Hemingway's Code, section 4750 et seq., provides that it shall be unlawful for any corporation which owns a compress, or which is engaged in the manufacture of cotton seed products, to own, lease, use, control, or operate a cotton gin in this state except "in the city or town of the location of its cotton oil plant or compress," and that any corporation which shall operate a cotton gin in violation of the statute shall be subject to a penalty of not less than one hundred dollars, nor more than five thousand dollars, and in addition thereto "shall forfeit its charter if a domestic corporation, and its right to do business in this state if a foreign corporation." This statute further provides that—"A concern prohibited by this act from owning or operating gins is at liberty to dispose of said gins for cash or credit within a reasonable time after the passage of this act and to operate such gins until sold within such time."

Since the institution of this suit, the validity of this act has been settled, the constitutionality thereof having been upheld in the case of *State ex rel. Collins* v. *Crescent Cotton Oil Co.,* reported in 116 Miss. 398, 77 So. 185, and *Crescent Cotton Oil Co.* v. *State ex rel. Collins,* 121 Miss. 615, 83 So. 680, and affirmed by the supreme court of the United States on November 14, 1921, 257 U. S. —, 42 Sup. Ct. 42, 66 L. Ed.—.

Now conceding the validity of the said act of 1914, and that appellant has violated this law, counsel for appellant, however, contends that the state is bound by the acts of its former attorney-general in granting appellant permission to continue to own and operate these gins, or, in other words, that the state is estopped to deny the validity or binding force of the agreement entered into between ap-

pellant and its former attorney-general, and that upon the refusal of the present attorney-general to renew the agreement made with his predecessor, appellant was entitled to a reasonable time thereafter within which to dispose of the gins.

The provision of the act of 1914 that corporations which were prohibited by the act from owning or operating gins might dispose of them within a reasonable time after the passage of the act cannot be altered or changed by the act or consent of any officer of the state, and all such concerns that continued to own and operate these prohibited gins after the expiration of a reasonable time from and after the passage of the act did so in violation of the provisions thereof.  Officers of the state cannot grant indulgencies authorizing the committal of offenses, and they have no power to authorize the continuance of any act or business which is in violation of law (*State ex rel. Tanner, Attorney General* v. *Northwestern Invest. Co.,* 70 Wash., 381, 126 Pac. 895; *State ex rel. Fishback, Insurance Commissioner* v. *Globe Casket & Undertaking Co.,* 82 Wash. 124, 143 Pac. 878, L. R. A., 1915B, 976), and the attempt by the attorney-general so to do was unauthorized.  The action of the attorney-general in granting appellant permission to own and operate these gins in violation of the positive provisions of the statute cannot amount to more than a promise of forbearance on his part, and since he was without power to suspend the operation of the statute and authorize the continuance of any act or business which was in violation of law, his action in attempting so to do can have no binding force on his successor or any other state officer having authority to enforce the provisions of the statute, since the state cannot be estopped by the unauthorized acts of its officers. 10 R. C. L., p. 705.

It may be, and probably is, true that, in continuing to own and operate these gins and in rebuilding the gin which was destroyed by fire, appellant acted in good faith, believing that it was protected by its agreement with the attorney-general, and if such is the case, it is regrettable

that it has incurred such harsh penalties, but it acted at its peril in disregarding the plain and positive provisions of the statute, and it follows that the decree of the court below must be affirmed.

*Affirmed.*