ISHEE, J.,
for the Court:
' ¶ 1. Cleveland Mobile Home Community LLC appeals a circuit court’s decision upholding a zoning decision by the City of Richland, Mississippi, and its mayor and board of aldermen (Board). Cleveland claims that the City’s resolution interpreting its nonconforming-use ordinance to prohibit Cleveland from replacing mobile homes after they are removed from lots, is arbitrary, capricious, illegal, unreasonable, not fairly debatable, and amounted to an improper and illegal taking without just compensation.
*304 ¶ 2. We find reversible error and render a judgment in favor of Cleveland.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. In the 1950s, the Cleveland Mobile Home Community began operating in Rankin County, Mississippi, just outside of the City of Richland. The Community contains 138 concrete pads on which mobile homes can be placed. The Community also contains space for seventeen campers or recreational vehicles (RVs). The pads and additional spaces are- rented to tenants. When the tenants leave, the Community seeks successive renters to bring in their mobile home, camper, or RV.
¶ 4. Though the record is unclear as to the exact date, the Community was annexed by the City, sometime after the Community’s inception. At the time of the annexation, the Community was classified as an “1-1, Light Industrial Zoning” property. Under the City’s ordinances, industrial property may not be used for residential purposes. Since the Community rents spaces to mobile-home residents, the property is technically used for residential purposes, which is a nonconforming use of the land.
¶ 5. The City has addressed its position on nonconforming land and structures in section 405 of the City’s ordinances. Section 405.1 recites that the intent of the ordinance is to cover nonconformities as they may exist in: (1) lots, (2) uses of land and structures, (3) structures, and (4) characteristics of use.
¶ 6. In section 405.1, the City states that it intends to allow “non[ jconformities to continue until they are removed, but not to encourage their survival. It is further the intent of this [ojrdinance that non[-]conformities shall not be enlarged upon, expanded!,] or extended, [nor] be used as grounds for adding other [structures or uses prohibited elsewhere in the same district.”
¶ 7. Although the Community has been considered a nonconforming use of land containing mobile homes, the City has not enforced section 405 until recently. The Community was allowed to have mobile homes moved in and out at its discretion as tenants came and left the property. In 2008, Cleveland Mobile Home Community purchased the property. Cleveland claims that it was assured by the City’s zoning administrator that it could continue moving mobile homes in and out of the Community without restriction. During the first few years of Cleveland’s operation of the Community, it moved fourteen new mobile homes into the Community without objection from the City. However, the Community has begun garnering negative attention from the City due to fire-code violations, overcrowding, deterioration of the mobile homes, and a rise in service calls to the Richland Police Department.
¶ 8. On April 8, 2011, the zoning administration informed Cleveland by written letter that section 405 would be enforced from now on, and that new mobile homes would not be allowed to occupy empty spaces after existing mobile homes were removed. Upon receipt of the letter, Cleveland requested a hearing before the Board.
¶ 9. On July 5, 2011, the Board heard presentations from Cleveland and from the City’s counsel. After the presentations, the Board approved a resolution stating: “In the event a mobile home or similar vehicle is removed from its then[-]present location in the Cleveland Mobile Home Park, another mobile home or similar vehicle shall not be placed on the vacated site.” Cleveland appealed this action to the Rankin County Circuit Court, which deter *305 mined that the Board’s action was not in error.
¶ 10. Homewood Company LLC, Stoney Creek Company LLC, J. Kane Ditto, and Joe T. Scott have filed an amici curiae brief as interested parties. These parties own similar properties to the Community in Rankin County. Specifically, the parties operate mobile-home parks in Pearl, Mississippi. One of the parties has already been deemed to operate under a nonconforming use, and has received a similar letter prohibiting the replacement of mobile homes on empty pads. Their argument is in line with that of Cleveland.
¶ 11. Cleveland raises several issues, which we have recharacterized as follows:
(1) Cleveland has a vested right to continue its nonconforming use of the property; (2) Cleveland’s continued placement of mobile homes on the property is a permissible continuation of the nonconforming use of the property; (3) the Board’s resolution interpreting the ordinance is arbitrary, capricious, and illegal; (4) the City is barred from enforcing the resolution by the equitable doctrines of estoppel, laches, and waiver; (5) the resolution constitutes an unconstitutional “taking” entitling Cleveland to damages; and (6) Cleveland’s due-process rights were violated in the July 5, 2011 hearing.
STANDARD OF REVIEW
¶ 12. “We will not disturb a decision of a governing board of authorities unless it is ‘unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency’s scope or powers; or violated the constitutional or statutory rights of the aggrieved party.’ ” Brinsmade v. City of Biloxi, 70 So.3d 1159, 1163 (¶ 14) (Miss.Ct.App.2011) (quoting Robinson v. Lincoln Cnty. Bd. of Sup’rs, 973 So.2d 288, 289-90 (¶ 6) (Miss.Ct.App.2008)). Further, “‘[t]he party challenging-the governing body bears the burden of proof showing that the decision rendered is arbitrary, capricious, discriminatory, or beyond the legal authority of the city board, or unsupported by substantial evidence.’ ” Brinsmade, 70 So.3d at 1163 (¶ 14) (quoting Mayor & Bd. of Aldermen v. Hudson, 774 So.2d 448, 451 (¶ 6) (Miss.Ct.App.2000) (citations omitted)).
¶ 13. Constitutional issues are reviewed de novo. Thoms v. Thoms, 928 So.2d 852, 855 (¶ 9) (Miss.2006). The question of whether the City’s nonconforming-use ordinance applies to the mobile-home park as a whole, or to individual lots within the park, is a question of law, which we review de novo. Jones v. Lutken, 62 So.3d 455, 459 (¶ 19) (Miss.Ct.App.2011).
DISCUSSION
I. Is there a vested right to continue nonconforming use of the property?
¶ 14. A citizen’s right to be protected in “the lawful use of his property is one of the most sacred rights reserved to him under our Constitution.” Fitzhugh v. City of Jackson, 132 Miss. 585, 605, 97 So. 190, 192 (1923). See Miss. Const. art. 3, §§ 14, 17; U.S. Const. amend. XIV, § 1.
¶ 15. On the other hand, municipalities have a right to enact zoning ordinances to, as here, separate residential areas of the city from commercial or industrial areas. Often times, as here, after a property owner has begun to use his property in a lawful manner, zoning regulations are enacted, which forbid that use of the property. Nonconforming-use ordinances are designed to protect the property owner by allowing him to continue to use the property as before, without allowing him to expand that use.
*306 ¶ 16. It is true, as the City argues, that “to continue a non[ ]conforming use is not a perpetual easement to make a use of one’s property detrimental to his neighbors and forbidden to them.” See Red Roof Inns, Inc. v. City of Ridgeland, 797 So.2d 898, 902 (¶ 10) (Miss.2001) (citation omitted) (permitting city to phase out nonconforming signs).
¶ 17. But the right to continue a nonconforming use is a. right that runs with the land and is not to be lightly divested. Regarding a party’s right to continue a nonconforming use, our supreme court has stated that “[t]he nature of the right to a non[ Jeonforming use is a property right. It has been held that the right to continue a non[ Jeonforming use, once established and not abandoned, runs with the land.” Barrett v. Hinds Cnty., 545 So.2d 734, 737 (Miss.1989) (internal citations omitted). Likewise, our supreme court has stated: “the Court must be reminded that the right to continue a non[ Jeonforming use is not a personal right but one that runs with the land. It .follows, as the night follows day, that this right may not be terminated or destroyed by [a] change of ownership of property alone.” Heroman v. McDonald, 885 So.2d 67, 71 (¶ 6) (Miss.2004) (citations omitted). Thus, under Mississippi law, the continuation of a nonconforming use is a well-established substantial right.
¶ 18. We therefore look to see if the City of Richland’s attempt to extinguish this right passes constitutional muster.
II. Is the continued placement of mobile homes on the property a permissible continuation of the nonconforming use?
¶ 19. Cleveland argues that the ordinance allows them to continue to use the land as a mobile-home park and that replacing mobile homes that are removed is not an impermissible expansion or extension of that use. According to Cleveland, the resolution adopted at the July 5 meeting seeks to impermissibly restrict this lawful usage.
¶ 20. The City has taken the position that “extension” refers to any action prolonging the life of the nonconforming use. The City further asserts that this right is a lot-by-lot right and that they may lawfully phase the mobile-home park out of existence in a piecemeal fashion. The City relies on City of Foley v. McLeod, 709 So.2d 471 (Ala.1998). In Foley, the court considered a nonconforming-use ordinance very similar to the one at issue here. As in this case, the property owner ran a mobile-home park. The court noted that Alabama law disfavors nonconforming uses. Id. at 473. The court held that the City would be estopped from enforcing the ordinance as to six mobile homes it permitted the landowner to purchase and place on the lots without objection, but concluded that the City could prevent future mobile homes from being placed on the lots. Importantly, however, the court did not consider any claims by the landowners that the ordinance constituted an unconstitutional taking of their property.[1]
¶ 21. The City also relies on City of Emporia Board of Zoning Appeals v. Mangum, 263 Va. 38, 556 S.E.2d 779 (2002). In City of Emporia, a- nonconforming-use ordinance was applied to prevent a mobile-home park from replacing a mobile home that had been destroyed by fire. Id. at 781. The court upheld the ordinance but did not consider the proper *307 ty owner’s argument that enforcement of the ordinance resulted in an unconstitutional divestment of his property rights.[2]
¶ 22. Because the Foley and Emporia courts failed to address the present constitutional claims, we must look further for guidance. Fortunately, some guidance exists in our own jurisprudence. In Jones v. Lutken, 62 So.3d 455, Jones owned and operated an RV campground, a convenience store, and permanent cabins for rental on the property. Id. at 456 (¶ 2). The property was zoned for residential, use, so the RV park, store, and cabin-rental business operated under a nonconforming-use ordinance.. Id. at 457 (¶ 3). The nonconforming-use ordinance provided: “It is the intent of this Ordinance to allow nonconformities to continue. It is further the intent of this Ordinance that nonconformities shall not be enlarged upon, expanded, or extended, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district.” Id.
¶ 23. At some point, Jones began selling portable cabins from the property, some of which were placed on RV lots in the RV campground and rented to tenants much like the other permanent, cabins already affixed on the property. Id. at (¶ 4). Jones was soon told to cease placing cabins on the RV lots, as it was an impermissible expansion of the nonconforming use. Id. at (¶ 5). The local board of supervisors ruled in favor of Jones at a hearing on the matter, and permitted the placement of the cabins on the property, finding that this was a continuation, and not an expansion, of the nonconforming use. Id. at (¶ 6). However, the circuit court later overturned the board’s ruling. Id. at (¶ 7).
¶ 24. On appeal, this Court defined the question to be “whether placing portable cabins on the RV lots was an expansion of Jones’s non[ jeonforming use or whether it was a permissible continuation of the non[ jeonforming úse.” Id. at 458 (¶ 15). The court noted:
To answer this question, the nature of Jones’s non[ jeonforming use must be defined. Jones had an RV park, a convenience store, and a few permanent cabins available for rent on the land. The homeowners contend that Jones had an RV park, and nothing else, and that these portable cabins are not RVs; thus, their placement cannot be a continuation of the permissible non[ jeonforming use. Jones argues that his non[ jeonforming use should be construed as a commercial operation, rather than merely an RV park. If the non[ jeonforming use is broadly defined as a commercial operation, then he claims it is easier to see how placing the portable cabins could be viewed as a continuation and not an expansion.
Id. at 458-59 (¶ 16).
¶ 25. It is important to note that the municipality did not claim, as the City does in this case, that the nonconforming use was permitted only on a lot-by-lot basis. Rather, the use of the property as a whole was the focus. This Court held that the ordinance at issue in Lutken defined RVs broadly enough to include the rental cabins at issue. As a consequence, the board’s determination that Jones was in compliance was not arbitrary and capricious and the circuit court’s decision overturning it was reversed. Id. at 459 (¶ 19).
¶ 26. Cleveland argues that while section 405 may not permit enlargement, *308 expansion, or extension of the use of the Community, it nonetheless grants it the right to continue to operate as a mobile-home park. Additionally, Cleveland asserts that replacing former mobile homes with new mobile homes is not enlarging, expanding, or extending the Community’s nonconforming use.
¶ 27. Other jurisdictions are in accord with the principles that, regarding mobile-home parks, the “nonconforming use” is properly defined as the park itself, and not individual lots within'the park, and extending the life of a nonconforming use by replacing homes as they are moved does not constitute an improper extension of the use. For example, in Eddins v. City of Lewiston, 150 Idaho 30, 244 P.3d 174 (2010), the Idaho Supreme Court upheld a property owner’s right to continue the primary use of his property as a manufactured-home park that also leased spaces to RVs. The Court held that “[t]he act of replacing an existing recreational vehicle with a new recreational vehicle is not an expansion or enlargement of [the] non[ ]conforming use.” Id. at 179. The replacement of RVs in the park was merely a “reasonable substitution of equipment or materials used in the business,” which was a protected nonconforming use. Id. The court explained:
The City correctly argues that allowing Eddins to replace the recreational vehicles will prolong the non[ Iconform-ing use, and likely will make it more difficult to satisfy the safety goals of the ordinance by slowing the elimination of the business. However, the goal of quickly eliminating the combination of manufacturing homes and recreational vehicles does not trump the due[-]process protection afforded to Eddins’[s] non[ ]conforming use.
Therefore, replacing an existing recreational vehicle with a new recreational vehicle in Eddins’[s] manufactured[-]home park constitutes a continuation of the non[ jeonforming use that is protected by due process. For that reason, we find the City’s action in this case violates Eddins’[s] due[-]proeess right to continue a non[ jeonforming use.
Id. at 180.
¶ 28. In Stagecoach Trails MHC, LLC v. City of Benson, 232 Ariz. 562, 307 P.3d 989 (2013), the court reached the same conclusion. The court defined the issue as “whether a mobile-home park as a whole, or only its individual constituent spaces, can be considered a non[ jeonforming use” under an ordinance similar to the City of Richland’s. Id. at 991. The court noted:
In this case we are concerned with a mobile-home park’s use as a mobile-home park, so we look to the park as a whole when considering whether an alteration voids the park’s legal non[ jeon-forming status. Replacing a mobile home in a mobile-home park does not amount to an expansion or replacement of the non[ jeonforming park: it does not alter the number of units in the park, nor does it expand the acreage of the park.... We therefore conclude that replacing a mobile home in a mobile-home park is a reasonable alteration that does not extinguish the park’s status as a non[ jeonforming use.
Id. at 994.
¶ 29. In Sunset Estate Properties, LLC v. Village of Lodi, 2013 WL 6021470 (Ohio Ct.App. Nov. 12, 2013), the municipality refused to reactivate utility services to vacant mobile-home lots in order to force their abandonment so that their nonconforming use could not be reestablished. Id. at *1. The trial court upheld the municipality’s actions but the appellate court reversed, holding that “[bjecause [the ordinance] is ambiguous, arbitrary, and unreasonable, we conclude that it is unconstitu *309 tional on its face.” Id. at ⅞5. The court held that property owners have substantive due-process rights that are, “objectively, deeply rooted in this Nation’s history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.” Id. at *7 (citations and internal quotation marks omitted).
¶ 30. We conclude that the reasonable interpretation of the ordinance is to construe the nonconforming use to relate to the mobile-home park as a whole. As long as the park is operated as such, without expansion, it is a permitted use. The City’s resolution, on the other hand, seeks to transform the nonconforming use to a pad-by-pad use and to destroy it by attrition. We next consider whether such an interpretation is a permissible one under our standard of review.
III. Is the Board’s resolution expanding the ordinance arbitrary, capricious, and illegal?
¶ 31. Our supreme court has defined “arbitrary” as something done without an adequate determining principle, “implying either a lack of understanding of or a disregard for the fundamental nature of things,” and has defined “capricious” as something done without reason, implying either a lack of understanding of or a “disregard for the surrounding facts and settled controlling principles.” Harrison Cnty. Bd. of Sup’rs v. Carlo Corp., 833 So.2d 582, 583 (¶ 6) (Miss.2002) (citations omitted).
¶ 32. The City’s resolution interprets the ordinance to mean that the nonconforming use must be considered on a lot-by-lot basis. As Cleveland points out, there is no principled basis to distinguish lots in a mobile-home park from apartments in an apartment complex, storage-rental units in a self-storage-rental business, or parking spaces in a parking garage. Any such structure in a nonconforming-use context could be faced with a municipality’s demand that apartments, storage units, or parking spaces not be refilled as tenants move out. This reflects a lack of understanding for the fundamental nature of things and a disregard for the surrounding facts and settled controlling principles. This deprives the property owner of his constitutional right to enjoy his property. We therefore find that the City’s resolution is arbitrary, capricious, and illegal.
IV. Is the City barred from enforcing the resolution by the equitable doctrines of estoppel, laches, and waiver?
¶ 33. Cleveland argues that the City should be prohibited from enforcing the resolution because it purchased the park “in reliance on the law applicable to non[ ]conforming uses[,] as well as over 50 years of prior practice by the City.” Cleveland also claims that the City’s chief building official advised them (before the April 8, 2011 letter) that they could put homes on vacant pads.
¶ 34. The City responds that it is not requiring Cleveland to remove any homes it had previously authorized and that its enforcement of the ordinance, through its interpreting resolution, is prospective only. With regard to advice given by the City’s chief building official, the City asserts that even if this were construed as a promise not to prohibit replacement of mobile homes in the future, it could not bind the City. The City cites Eastman Oil Mills v. State ex rel. Roberson, 130 Miss. 63, 93 So. 484 (1922). In Eastman Oil Mills, the court stated:
The action of the Attorney General in granting appellant permission to own and operate these gins in violation of the *310 positive provisions of the statute cannot amount to more than a promise of forbearance on his part, and since he was without power to suspend the operation of the statute and authorize the continuance of any act or business which was in violation of law, his action in attempting so to do can have no binding force on his successor or any other state officer having authority to enforce the provisions of the státute, since the state cannot be estopped by the unauthorized acts of its officers.
Id. at 73, 93 So. at 487. Accord Robert E. Ratliff Co. v. Miss. State Highway Comm’n, 400 So.2d 1211, 1214 (Miss.1981) (“No such verbal statement by an employee of a public body could work an estoppel as against the state, or any other political subdivision.”).
¶ 35. Although the City would not be estopped from enforcing a valid nonconforming ordinance, we have found that the ordinance, as interpreted by the July 5 resolution, is invalid. We therefore find this issue moot.
V. Does the resolution constitute an unconstitutional “taking” entitling Cleveland to damages?
¶ 36. Cleveland argues that enforcement of the resolution allows the City to take its property “lot by lot” and this entitles Cleveland to compensation and damages. See First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal., 482 U.S. 304, 316, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (“[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.”) (citation omitted).
¶ 37. The City points out that Cleveland has cited no cases where a nonconforming-use ordinance that seeks to gradually eliminate the nonconforming use has been held to be a “taking.” Citing Mississippi State Highway Commission v. Roberts Enterprises, 304 So.2d 637 (Miss.1974) (placement of billboards along highway may be regulated without compensation), the City claims that enforcement of zoning restrictions is a police power that does not require compensation. In Roberts Enterprises, the supreme court noted that “where the owner of property is merely restricted in the use and enjoyment of his property, he is not entitled to compensation.” Id. at 639 (quoting Jackson Mun. Airport Auth. v. Evans, 191 So.2d 126, 133 (Miss.1966)).
¶ 38. Based upon our finding that the resolution may not be enforced against Cleveland, we need not consider whether a contrary finding might entitle Cleveland to some compensation. We find this issue moot.
VI. Were Cleveland’s due-process rights violated in the July 5, 2011 hearing?
¶ 39. Cleveland argues that it was denied due process at the July 5, 2011 hearing. As the City points out, this argument was not presented to the circuit court and is therefore not properly before this Court. See Fowler v. White, 85 So.3d 287, 292-93 (¶ 21) (Miss.2012). We therefore decline to consider this issue.
CONCLUSION
¶ 40. We find that the City of Richland acted arbitrarily and capriciously in adopting the July 5, 2011 resolution prohibiting the replacement of mobile homes on vacated pads in the Cleveland Mobile Home Community. Therefore, we reverse and render the circuit court’s judgment.
¶ 41. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. *311 ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
LEE, C.J., IRVING, P.J., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. No final judgment had been entered on this claim, so it was not considered on appeal. Id. at 472 n. 1.

. The court held that the trial court, by Virginia statute, had no jurisdiction to consider constitutional claims. Id. at 782-83.